THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MARY HABER, Appellant.

Fourth Department, June 28, 1927.

Crimes — manslaughter, first degree — conviction based on sale of poisonous liquor — evidence does not show beyond reasonable doubt that liquor bought from defendant caused death — dying declarations, while admissible, were entitled to little weight — reversible error to charge, as matter of law, that defendant's hotel was public nuisance under Penal Law, § 1530, if intoxicating liquor was sold there.

The defendant has been convicted of the crime of manslaughter in the first degree on a charge that she sold poisonous liquor to the decedent which he drank and which caused his death. The evidence shows that the defendant sold intoxicating liquor at her hotel and that a short time before the decedent died he purchased liquor there. The conviction cannot be sustained, however, since it appears that the decedent was a hard and continuous drinker of intoxicating liquor; that he had drunk liquor obtained from other sources of supply immediately before he purchased the liquor in question; that he had other liquor in his possession at the time he purchased the liquor from the defendant and that others who drank from the liquor which he purchased from the defendant were not made sick thereby. The evidence does not show beyond reasonable doubt that the liquor which the decedent bought from the defendant was the cause of decedent's death.

Dying declarations by the decedent purporting to implicate the defendant, while admissible, were of little value, since it appears that the declarations were merely an opinion by the decedent that the liquor purchased from the defendant was the cause of his then serious condition, and that he was actuated by a desire to compel the defendant or her husband to pay damages for selling him poisonous liquor.

The court charged the jury that the defendant's hotel was a public nuisance under section 1530 of the Penal Law, if the defendant was engaged in selling intoxicating liquor therein. Since it was undisputed that the defendant was engaged in the illegal sale of intoxicating liquor, the charge was in effect that the sale thereof was, as a matter of law, a crime under section 1532 of the Penal Law. This charge was erroneous and constitutes reversible error.

APPEAL by the defendant, Mary Haber, from a judgment of the County Court of the county of Niagara, rendered on the 7th day of January, 1927, convicting her of the crime of manslaughter, first degree.

*Roy H. Ernest,* for the appellant.

*Mortimer A. Federspiel, District Attorney,* for the respondent.

HUBBS, P. J. The defendant is a married woman, twenty-two years of age, of Polish descent. She and her husband conducted a hotel at Lockport, N. Y. During the summer of 1926 her husband

went to Europe on a visit, and left the defendant in charge of the hotel. She employed a bartender, and it is admitted that intoxicating liquor was sold at the bar. The indictment charges that she purchased of a man named Frey a quantity of wood alcohol and willfully and feloniously sold some of it to Earl Russell, and that he drank it, thereby causing his death. Upon conviction she was sentenced for a term of not less than five years or more than ten years in Auburn State Prison. The learned county judge granted a certificate of reasonable doubt.

There is no serious contention but that Earl Russell, the deceased, was a hard drinker. It appears that during the summer, prior to Saturday, July twenty-fourth, when he drank the liquor in question, he had been almost continuously drinking to excess. He kept liquor in bottles in his automobile and upon the jobs where he worked as a painter, also in the barn where he kept his automobile. On the night before the day in question he had a bottle of whisky on the job and gave two witnesses a drink out of it. One testified that " it didn't taste like good whiskey." The other testified, " It was no good; it was rank; * * * it was rotten stuff." On the morning in question he had a bottle in the barn and stated he was going to have a drink and went to the barn. On his return he stated that he did not leave any in the bottle. The witness Frasier testified that about a week before the day in question Russell gave him two drinks out of a bottle at the cottage where Russell was staying. He testified that after drinking " I felt as if I was drunk for a month after I got home." The Monday before Saturday, the twenty-fourth of July, the day in question, Russell and a party of friends were away most of the day on a drinking bout, visiting different drinking places. This testimony was all given by witnesses called by the People. The evidence clearly discloses that Russell was a hard drinker, that he drank at all sorts of places, and from bottles, and that he drank continuously. Between twelve and one o'clock in the afternoon on July twenty-fourth, Russell, with some companions, went to the defendant's hotel. During the afternoon Russell took five drinks of liquor at the bar. The evidence discloses that seven other men took from one to twelve drinks each. It was all the same kind of liquor, taken from the same bottle. There was only one kind of liquor kept for sale. It all came out of the same jug. Although all of said seven men were sworn, there is no evidence in the record that any of them suffered from wood alcohol poisoning, except the evidence that one was sick in the night, but it appears that he drank beer at another place the same afternoon. He testified that the beer which he drank was " fixed, * * * why as soon as

I took it I was simply knocked cold; that is all there was of it, for a little while." His testimony to the effect that he was sick during the night, as a whole, does not tend to establish that he was poisoned by the liquor which he drank at defendant's hotel.

Russell left the defendant's hotel during the afternoon and went to his mother's cottage. He became ill and died on July twenty-sixth. It clearly appears that he died as the result of drinking wood alcohol. There is some testimony to the effect that he drank liquor at two other places during the afternoon, after he left the defendant's hotel, but that testimony is contradicted. The only testimony which tends to establish that Russell drank the wood alcohol at defendant's hotel was that given by his mother, stepfather and a woman who testified that she was keeping company with Russell. Their testimony related to dying declarations made by Russell shortly before his death, to each while alone with him. The testimony was to the effect that he stated he had five drinks at Haber's, that he was not at any other place, that he did not have any drinks except at Haber's. The stepfather testified, as did Miss Ryan, that he said, " I want you to   *   *   *   make him pay and pay and pay," referring to Haber. While such testimony was competent, it is, under all the facts in this case, insufficient to establish beyond a reasonable doubt that Russell bought whisky containing wood alcohol at defendant's hotel.

We are warned by many decisions that dying declarations should be received with caution, and that when received juries should be warned to scrutinize such declarations carefully. The following statement from Wood's Practice Evidence (2d ed. p. 325), clearly expresses the generally accepted view of this class of evidence: " It is the universal judgment of the courts, text-writers, and all thinking men, that this class of evidence is to be received with great caution, and, except where the circumstances were such as to render it next to impossible that the deceased could be mistaken as to the criminating facts stated, juries should scan the statement with great care, especially where there is evidence tending to show that the deceased was mistaken, for it is to be remembered that while the deceased made the statement under the apprehension of certain death, yet the respondent has not had the privilege of cross-examining the witness, or testing the real foundation of the deceased's belief as to his guilt, and that where the witness has not a deep sense of accountability to his Maker, and an enlightened conscience, the passion of anger, and feelings of revenge, or, in the case of mutual conflict, the natural desire of screening his own misconduct, may affect the truth and accuracy of his state-

ments, and give a color to the transaction which, had further investigation been attainable, might have been proved to be incorrect."

It is apparent that deceased could not have known that it was the liquor which he drank at defendant's hotel which caused his condition. At most, it could have been only his opinion, as it is unquestioned that he had been, up to and including the morning in question, drinking heavily of liquor that had not, so far as the evidence discloses, been purchased from the defendant.

It would not have been competent to receive in evidence a dying declaration made by deceased giving his opinion as to which of different drinks he had taken had caused his condition. (*People* v. *Shaw,* 63 N. Y. 36; 21 Cyc. 988.)

It is also apparent that the desire to make the defendant, or her husband, pay damages was a prominent thought in the mind of deceased, for he said to two of the three witnesses who testified to his dying declarations, " I want you to * * * make him pay and pay and pay."

The bartender who actually sold the liquor was tried on a like charge and acquitted.

Under all the circumstances disclosed by the record we are satisfied that the People failed to establish the defendant's guilt beyond a reasonable doubt.

The learned county judge charged the jury that the defendant's hotel was a public nuisance, under section 1530 of the Penal Law, if the defendant was engaged in selling intoxicating liquor therein. It was undisputed that defendant was engaged in selling intoxicating liquor therein. The charge was, in effect, that the sale of intoxicating liquor was, as a matter of law, a crime under section 1532 of the Penal Law. In view of the decision of this court in *People* v. *Cook* (220 App. Div. 110), such charge constituted reversible error.

The judgment of conviction should be reversed upon the law and the facts and a new trial granted.

All concur. Present — HUBBS, P. J., CLARK, SEARS, CROUCH and TAYLOR, JJ.

Judgment of conviction reversed on the law and the facts and a new trial granted.