No. 95,760

STATE OF KANSAS, *Appellee*, v. BILLY L. SCOTT, *Appellant*.
(171 P.3d 639)

Opinion filed December 7, 2007.

*Benjamin J. Fisher*, senior assistant district attorney, argued the cause, and *Keith E. Schroeder*, district attorney, and *Paul J. Morrison*, attorney general, were with him on the brief for appellee.

*Jennifer E. Conkling*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

The opinion of the court was delivered by

BEIER, J.: Barkeep Billy Scott challenges his jury conviction of involuntary manslaughter for the death of patron Juanita Goodpasture, who expired the night she consumed a red, yellow, and green alcoholic concoction too aptly named "The Stoplight."

Evidence in the record before us is conflicting on exactly how much other alcohol Goodpasture consumed at Scott's establish-

ment, The Point; on the exact contents of the three drinks composing "The Stoplight"; on whether Goodpasture drank "The Stoplight" to win a bet with Scott or a contest of his design; and on whether Scott offered a prize or refund if Goodpasture was able to refrain from using the bathroom and remain upright for 30 minutes after "The Stoplight" slid down her throat.

There is no conflict, however, on what happened to Goodpasture after she was assisted home from The Point. She passed out in the yard of her home, where her mother and a friend left her, alone and unconscious, until bar closing time. Goodpasture's mother and friends then worked together to get the 273-pound Goodpasture into her living room and left her alone again while they watched movies elsewhere.

The next day, Goodpasture was dead, a victim of acute ethanol intoxication. By the time of her autopsy, a blood alcohol content of .37 to .43 was detected. The examining physician opined that Goodpasture's aspiration of her stomach contents also could have contributed to her demise. Neither he nor any other witness testified that "The Stoplight," in particular, had a lethal role.

The State initially charged Scott under alternative theories of involuntary manslaughter—a violation of K.S.A. 2004 Supp. 21-3404(c) based on the doing of a lawful act in an unlawful manner, and a violation of K.S.A. 2004 Supp. 21-3404(a) based on unintentional and reckless behavior. After his arrest, it amended its complaint to charge Scott only under K.S.A. 2004 Supp. 21-3404(c).

At trial, the relevant portion of Jury Instruction No. 6, taken from PIK Crim. 3d 56.06, provided:

"In Count I, the defendant is charged with the crime of involuntary manslaughter. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
1. That the defendant unintentionally killed Juanita Goodpasture;
2. That it was done during the commission of a lawful act in an unlawful manner. . . ."

Jury Instruction No. 7 stated:

"The laws of Kansas provide: No club, drinking establishment, caterer or holder of a temporary permit, nor any person acting as an employee or agent thereof, shall offer or serve any free cereal malt beverage or alcoholic liquor in any form

to any person; or encourage or permit, on licensed premises, any game or contest which involves drinking alcoholic liquor or cereal malt beverage or the awarding of drinks as prizes."

Although Scott argues several sometimes interrelated issues on appeal, we conclude that two are dispositive and the rest, moot.

### Necessity of Proof of Causation

We first address whether involuntary manslaughter, as defined in Kansas, requires the State to prove that a defendant's conduct caused the victim's death. Our standard of review on this question of statutory interpretation is de novo. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006); see also *State v. Robinson*, 281 Kan. 538, 539-40, 132 P.3d 934 (2006) (in interpreting statute, court must give effect to plain, unambiguous language, expressed intent of legislature). Although criminal statutes must be strictly construed in favor of the accused, our interpretation must be reasonable and sensible in light of the legislature's word choice. See *State v. Vega-Fuentes*, 264 Kan. 10, 14, 955 P.2d 1235 (1998).

As mentioned, Scott ultimately was charged and convicted under K.S.A. 2004 Supp. 21-3404(c), which defines involuntary manslaughter as "the unintentional killing of a human being committed . . . during the commission of a lawful act in an unlawful manner." Nothing in this statute explicitly exempts bar owners or bartenders from criminal liability for the death of a patron if the elements of the criminal offense are proved. That being said, it does not appear that our involuntary manslaughter statute has ever been employed on similar facts, *i.e.*, to prosecute a bar owner or bartender on the theory that violation of a statute regulating the dispensing of liquor resulted in fatal alcohol poisoning of a patron. See, *e.g.*, *State v. Bell*, 273 Kan. 49, 51-52, 41 P.3d 783 (2002) (demonstrating typical invocation of K.S.A. 21-3404(c) as lesser included offense in murder case in which defendant claims lawful self-defense but may have exerted unlawful excess force, leading to unintentional death of victim); see also *State v. Bell*, 266 Kan. 896, 916, 975 P.2d 239, *cert. denied* 528 U.S. 905 (1999) (instruction on involuntary manslaughter not warranted where no evidence other than defendant's own statement that he fired first shot in

self-defense); *State v. Meyers*, 245 Kan. 471, 474, 781 P.2d 700 (1989) (involuntary manslaughter instruction not available despite assertion of self-defense where evidence established that, after altercation, defendant went to his home, got a gun, went looking for the victims, fired warning shots, then closed his eyes and fired two shots, one of which struck and killed the victim); *State v. Seelke*, 221 Kan. 672, 673, 681, 561 P.2d 869 (1977) (wife's voluntary manslaughter conviction for shotgun slaying of her drunken husband who had just savagely beaten her and threatened both her and her twin babies reversed where evidence supported instruction on lesser included offense of involuntary manslaughter based on lawful act, unlawful manner self-defense); *State v. Gregory*, 218 Kan. 180, 185-86, 542 P.2d 1051 (1975) (evaluating district court's instruction on manslaughter, holding jury could conclude self-defense with excessive force, justifying lawful act, unlawful manner involuntary manslaughter instruction).

Several Kansas cases arising under distinct factual circumstances demonstrate that convictions of involuntary manslaughter require proof that the defendant's conduct caused the victim's death. *State v. Chastain*, 265 Kan. 16, 25, 960 P.2d 756 (1998); *State v. Collins*, 36 Kan. App. 2d 367, 371, 138 P.3d 793 (2006). Moreover, the victim's contributory negligence, while not a defense, is

"a circumstance to be considered by the jury along with all other evidence to determine whether the defendant's conduct was or was not the proximate cause of the decedent's death. In some instances, a decedent's contributory negligence may have been a substantial factor in his or her death and a superseding cause thereof; it may have intervened between a defendant's conduct and the fatal result so as to be itself the proximate cause." *Chastain*, 265 Kan. 16, Syl. ¶ 7.

See *Collins*, 36 Kan. App. 2d at 371.

In *Chastain*, 265 Kan. 16, the defendant was charged with involuntary manslaughter after a fatality resulted from a collision at an intersection. The State contended the defendant was under the influence of alcohol and driving at a high speed; the defendant contended the victim's negligence in running a stop sign caused the accident. When, during deliberations, the jury asked if the fault of both parties could be considered, the district judge responded in the affirmative. On appeal, this court upheld the defendant's

conviction of the lesser included offense of driving under the influence, holding that the district judge's response to the jury was correct and that causation was an essential element of the crime. 265 Kan. at 24-25.

In *Collins*, 36 Kan. App. 2d 367, our Court of Appeals examined another involuntary manslaughter case involving an allegation that the defendant driver was under the influence of alcohol and his ultimate conviction on the lesser included offense of driving under the influence. At trial, the defense had relied on the victim's negligence in sitting on a stationary motorcycle in the middle of the road at night, arguing that the fatality accident would have occurred even if the defendant had been sober and reasonably prudent. On appeal, the State argued that the district judge had erred in instructing the jury on proximate cause. The appellate panel affirmed the conviction, holding that proof of involuntary manslaughter while driving under the influence required evidence that defendant's conduct proximately caused the victim's death. 36 Kan. App. 2d at 371.

Other Kansas cases have consistently held likewise. See *State v. Anderson*, 270 Kan. 68, 72, 12 P.3d 883 (2000) (proof of proximate cause required); *State v. Yowell*, 184 Kan. 352, 336 P.2d 841 (1959) (more required for proof of involuntary manslaughter than mere unlawful act as attendant circumstance in series ultimately resulting in fatality; unlawful act must be proximate cause of victim's death); see also *State v. Scott*, 201 Kan. 134, Syl. ¶ 3, 439 P.2d 78 (1968) (evidence sufficient to sustain manslaughter conviction where death would not have resulted except for unlawful conduct); *State v. McNichols*, 188 Kan. 582, 586-87, 363 P.2d 467 (1961) (same; unlawful conduct must be proximate cause of death to support manslaughter); *State v. Maxfield*, 30 Kan. App. 2d 873, 878-79, 54 P.3d 500 (2001), *rev. denied* 273 Kan. 1038 (2002) (holding evidence sufficient to support finding that defendant's conduct caused victim's death, thus supporting involuntary manslaughter conviction); *State v. Woodman*, 12 Kan. App. 2d 110, 113-17, 735 P.2d 1102 (1987) (defendant charged with aggravated vehicular homicide, driving under the influence; victim ran red light; jury

instruction too vague on necessity of proximate-cause proof; conviction reversed).

These results are not surprising, given the statute's plain language. The legislature chose to use the word "killing" to describe the death of the victim for each of the potential means of involuntary manslaughter it defined. "Killing" connotes specific, proximate causation—not merely a peaceful, natural death. We note that Black's Law Dictionary recognizes the word's necessary implication; "kill" means "to end life; to *cause* physical death." (Emphasis added.) Black's Law Dictionary 886 (8th ed. 2004).

Application of the Kansas rule requiring proof of causation also is supported by our review of precedent from other jurisdictions that have arisen in factual circumstances somewhat more similar to those before us here. See *Votre v. State*, 192 Ind. 684, 138 N.E. 257 (1923) (at party involving drinking, dancing, defendant offered drink of whisky to minor girl; girl died that night of heart attack caused by alcohol poisoning; defendant's conviction reversed for insufficient evidence of causation; death not natural result, probable consequence of defendant's unlawful act; victim had long suffered from heart disease); *Jabron v. State*, 172 Miss. 135, 159 So. 406 (1935) (manslaughter conviction in death of child to whom defendant gave whisky reversed; defendant had no reason to anticipate act would result in death; evidence showed child's mother also gave child whisky on same day; child liked, had access to whisky); *People v. Haber*, 221 App. Div. 150, 223 N.Y.S. 133 (1927) (victim died of alcohol poisoning shortly after drinking wood alcohol served illegally at defendant's hotel; notwithstanding victim's dying declaration that defendant's whisky killed him, court held evidence insufficient to establish defendant's unlawful sale caused death; evidence showed victim hard drinker, drank at other places on day of death; others had drunk defendant's whisky, had not been poisoned); *State v. Reitze*, 86 N.J.L. 407, 92 A. 576 (1914) (innkeeper unlawfully sold liquor to visibly intoxicated man who, upon leaving premises, died after fall; court reversed manslaughter conviction; although sale of liquor unlawful, sudden death not usual, probable result of that unlawful act).

In light of all of the above, we have no hesitation in holding the State must prove that a defendant's behavior was the proximate cause of the victim's death under K.S.A. 2004 Supp. 21-3404(c). We now turn to the question of whether that proof existed in this case.

## Sufficiency of Evidence of Causation

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, examined in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Gholston*, 272 Kan. 601, 605, 35 P.3d 868 (2001), *cert. denied* 536 U.S. 963 (2002); *State v. Jasper*, 269 Kan. 649, 655, 8 P.3d 708 (2000). While the State must sustain its burden of proof on each element of an offense charged, circumstantial evidence and the logical inferences therefrom are sufficient to support a conviction of even the most serious crime. See *State v. Murillo*, 269 Kan. 281, 286, 7 P.3d 264 (2000); *State v. Reed*, 256 Kan. 547, 566, 886 P.2d 854 (1994); see also *State v. Wilkins*, 269 Kan. 256, 267, 7 P.3d 252 (2000) (quoting *State v. Harper*, 235 Kan. 825, 831, 685 P.2d 850 [1984]). If an appellate court holds that evidence to support a conviction is insufficient as a matter of law, the conviction must be reversed; and no retrial on the same crime is possible. See *Burks v. United States*, 437 U.S. 1, 11, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978) (double jeopardy precludes second trial once appellate court reverses for insufficient evidence); *State v. Houck*, 240 Kan. 130, 135-36, 727 P.2d 460 (1986) (conviction reversed without remand, where evidence did not support conviction of offense charged).

Relevant to this issue, Scott asserts that proof of proximate causation was lacking in his trial. He argues that Goodpasture caused her own death by drinking voluntarily to excess or that her death was attributable to the combination of her voluntary drinking and her mother's neglect. He also advances what is essentially a public policy argument that it is illogical for Kansas law to subject him to criminal liability when he could not have been subjected to civil

liability. See, *e.g.*, *Mills v. City of Overland Park*, 251 Kan. 434, 837 P.2d 370 (1992) (disallowing civil suit against vendor after death of intoxicated customer); *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (1985) (disallowing civil suit against vendor after injury to third party by intoxicated customer).

These arguments do not convince us. Scott's attempt to lay blame at the feet of Goodpasture and her mother is a jury argument. We do not reweigh evidence on appeal. *State v. Harris*, 284 Kan. 560, 579, 162 P.3d 28 (2007). His effort to portray his exposure to criminal liability as unfair when compared to Kansas' rejection of civil liability for alcohol vendors, although at least superficially sensible, is addressed to the wrong branch of state government. He needs to speak to his legislator about the potential breadth of application of K.S.A. 21-3404(c).

We nevertheless conclude that the evidence of proximate causation placed before Scott's jury was insufficient as a matter of law. The State proved that Goodpasture, an adult, voluntarily consumed alcohol including "The Stoplight," at The Point. It proved that her death resulted from acute ethanol poisoning. But it put on no evidence to show that "The Stoplight"—the only alcohol alleged to have been supplied to her by Scott illegally, *i.e.*, the only alleged lawful act performed in an unlawful manner—led to the poisoning. Although the jury might reasonably have inferred that "The Stoplight" accounted for some part of Goodpasture's blood alcohol content, there was no testimony demonstrating that "The Stoplight," in particular, marked the doorway from her intoxication to her death.

On this record, the two cases from other jurisdictions cited by the State cannot save Scott's conviction.

The first, *State v. Rohm*, 609 N.W.2d 504 (Iowa 2000), involved the death of a minor to whom alcohol was supplied through the efforts of the defendant and her sons. Although the State is correct that the *Rohm* defendant's involuntary manslaughter conviction for "unintentionally caus[ing] the death of another person by the commission of a public offense" (Iowa Code § 707.5 [1997 Supp.]) was affirmed by the Iowa court, 609 N.W.2d at 507, 509, the victim's youth makes the case too distinct to be of any persuasive value

here. Supplying *any* alcohol to a minor, except in very narrow circumstances, is unlawful. In *Rohm*, that fact would have gone a long way toward meeting the State's burden to prove a causal link between the supplying—defendant's illegal conduct—and the minor's alcohol poisoning death.

The second case relied upon by the State, Nebraska's *Thiede v. State*, 106 Neb. 48, 182 N.W. 570 (1921), also arose in very different circumstances. *Thiede* involved a defendant who gave an unlimited supply of a home brew to another adult. The court held that: Where a person furnishes to another intoxicating liquor which,

"by reason of its extreme potency or poisonous ingredients, is dangerous to use as [a] beverage, [and] the party furnishing the liquor knows, or . . . should have known, of the danger, then there appears from his act a recklessness which is indifferent to results. Such recklessness in the furnishing of intoxicating liquors, in violation of law, may constitute such an unlawful act as, if it results in death, will constitute manslaughter." *Thiede*, 106 Neb. at 58.

Here, although the State put on evidence of the potency of "The Stoplight," it did not prove that it contained poisonous ingredients.

Even viewing the evidence before Scott's jury in the light most favorable to the State, as required, it was insufficient to show that Scott's conduct in serving "The Stoplight" caused Goodpasture's death. Without such proof, his performance of a lawful act in an unlawful manner was not involuntary manslaughter under K.S.A. 2004 Supp. 21-3404(c).

Reversed.

DAVIS, J., not participating.

GREENE, J., assigned.