No. 117,884

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

QWENCI DEION LACY,
*Appellant*.

SYLLABUS BY THE COURT

1.

If the government is to obtain a conviction for a serious offense, the United States Constitution guarantees to every criminal defendant the right to demand that the government prove beyond a reasonable doubt to a jury each element of the crime charged.

2.

When the defendant is tried and convicted but the evidence isn't sufficient to support all elements of the crime, the proper remedy is to reverse the conviction without sending the case back for a new trial.

3.

Under K.S.A. 22-3201(e), the district court may permit a criminal charging document to be amended at any time before the jury's verdict.

4.

In this case, where the evidence did not support the elements of the crime for which the defendant was charged and convicted (and there were no potential lesser-included offenses at issue), the defendant's conviction must be reversed.

Appeal from Sedgwick District Court; FAITH A.J. MAUGHAN, judge. Opinion filed August 24, 2018. Reversed and vacated.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., LEBEN, J., and BURGESS, S.J.

LEBEN, J.: The power of a prosecutor is great. In many cases, prosecutors can choose at the outset whether to charge someone with a crime at all. If they choose to bring a charge, often they may decide to bring a lesser or greater charge given the facts at hand. After charging, they can choose whether to offer a plea bargain to let the defendant plead to a lesser offense. And after conviction, if one is obtained, they may argue for a greater or lesser sentence.

But power within the legal system is subject to rules designed to protect us all from the potential abuse of that power. As a result, prosecutors also have the responsibility to exercise care to be sure that their power is carried out within the rules.

This case is an example of what can happen when a prosecutor makes a mistake—one apparently made through carelessness, not ill will. The result is that we must set aside a man's conviction for aggravated indecent liberties against a child. And because the mistake wasn't noticed until after the defendant had already been tried and convicted, the

State does not get a do-over: There will be no second trial at which the mistake could be corrected.

We hope that our opinion will explain how this happened and why this is the legally correct result.

The defendant is Qwenci Lacy. He had had a relationship with Latifah K. since he had been 14 years old, and they had four children together. When the events leading to the criminal charge against Lacy took place, Latifah also had a four-year-old child, A.L.-K., who wasn't Lacy's biological child. But Lacy had been around A.L. since she was born and A.L. called him "Daddy."

Lacy and Latifah had a volatile relationship, and Latifah had kicked him out of the house for being too violent. But on a night when the full family got back together for a birthday, Latifah felt that Lacy seemed to be acting strangely. Lacy made unwelcome sexual advances on Latifah that evening, and she said that at one point he asked whether she "[took] him for the type of person that will fuck with a kid."

A few days later, Latifah's sister, Markeeta K., was taking care of several children, including A.L. After Markeeta gave the kids bananas and sent them to play, she said she saw her own daughter stroking a banana as if it were a penis. When Markeeta asked her daughter where she had learned that, the daughter said she'd learned it from A.L.

Markeeta then called A.L. in and asked her where she had learned that behavior. A.L. shrugged and got quiet. Markeeta went through the names of several family members, asking if any among several people she named had touched A.L. or done anything bad to her. She answered no right away to each of several names before Markeeta asked that question about Lacy.

3

A.L. then got quiet. When Markeeta asked the question again, A.L. said, "Yes." A.L. then asked whether she was "gonna get in trouble" because her dad had told her she would get in trouble for telling. Markeeta assured her that she wasn't in any trouble. Markeeta asked where Lacy had touched her. A.L. cried and pointed to her genital area and chest, as well as to Markeeta's genital area.

Markeeta then called Latifah, who came and talked to A.L. A.L. again said that her daddy had touched her and pointed to her chest and genital area. Latifah called the police.

That led to a taped interview of A.L. by a social worker. A.L. told the social worker that her daddy had lain her down on the couch, taken off her pants and panties, and used his hand to touch her chest and "potty." She said her daddy had put his "pee" in her "potty" and that something had come out of his pee. She said he had done this more than once and showed with dolls what had been done—pulling the little girl doll's legs above its ears and laying the boy doll on top of the girl doll. A.L. said her daddy had said she'd get a "whooping" if she told anyone.

With those facts in mind, let's look at the potential criminal charges the State might have brought. We'll use the statutory language as it stood when, according to A.L., Lacy improperly touched her.

Aside from intercourse, the Kansas Legislature has set out two forms of indecent liberties with a child—one is touching, in which the offender touches the victim with the required criminal intent, and the other is soliciting, in which the offender solicits the victim to touch "the person of another," again with the required criminal intent. See K.S.A. 2015 Supp. 21-5506(a), (b)(2), and (b)(3). The offense is aggravated—making it aggravated indecent liberties with a child—if the child is less than 14 years old (or, for

4

children 14 or 15, for some especially serious forms of the offense). See K.S.A. 2015 Supp. 21-5506(b).

With two ways to commit the offense—touching or soliciting—it's immediately apparent that the underlying facts taken from A.L.'s statements would be a touching offense, not soliciting. She told the nurse that her daddy put her in some positions, took off her clothes, and touched her with his hand and his "pee."

But the State charged Lacy with the soliciting offense. That's set forth in the State's charging document against Lacy, which alleged that he "unlawfully solicit[ed] a child under fourteen (14) years of age, to-wit: [A.L.], four (4) years of age, . . . to engage in any lewd fondling or touching of the person of another . . . ."

At trial, though, the State—partially—shifted course. It presented the evidence we've described, evidence that would have supported a charge of the touching form of aggravated indecent liberties. The State then submitted proposed jury instructions to the court for that offense, and the court gave those instructions. They told the jury that the State needed to prove that Lacy had "engaged in lewd fondling or touching of [A.L.]," the touching form of the offense. And the jury convicted the defendant.

But the State never asked the court to amend the charge. And the district court's final judgment—the "journal entry of judgment"—shows the defendant was convicted of the soliciting form of the offense, not the touching form.

To recap, the facts supported only one form of aggravated indecent liberties—the touching form. The State charged the defendant with the wrong crime, never asked for the charge to be amended, and obtained a conviction for the wrong charge. Meanwhile, the court gave the jury instructions about the form of the offense *not* charged.

5

Lacy has appealed his conviction to our court. He presents a simple argument: The evidence doesn't support the conviction.

Lacy has some strong legal support for his position. If the government is to obtain a conviction for a serious offense, the United States Constitution guarantees to every criminal defendant the right to demand that the government prove beyond a reasonable doubt to a jury each element of the crime charged. *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); see *United States v. Gaudin*, 515 U.S. 506, 510, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995). It's immediately apparent that the evidence here didn't support the crime charged or the crime of conviction. The State doesn't suggest it does.

So where does that leave us?

The State argues that we should treat this as a jury-instruction error. Though the State charged Lacy with the soliciting form of the offense, the jury instructions gave the jury the elements of the touching form of the offense. The State concedes "that jury instructions should follow the charges contained in the charging document" and that "the jury was not instructed to find, and therefore never found, the exact elements that defendant was charged with." Based on those arguments, the State concedes that we must reverse Lacy's conviction but asks that we send the case back to the district court for a new trial.

The State doesn't explicitly say in its brief what that trial would be about. Significantly, the State doesn't suggest that it has evidence to support the soliciting form of the offense, the charge that would still be pending against Lacy if we sent the case back for a new trial. We see no way the evidence here could ever be packaged to fit the soliciting offense.

That conclusion is based not only on the factual summary we've already provided—in which the acts A.L. told of were touching, not soliciting—but also on a legal point about the soliciting offense. It requires that the solicitation be one to touch "the person of another with the intent to arouse or satisfy the sexual desires of the child, the offender or another." K.S.A. 2015 Supp. 21-5506(b)(3)(B). Because that statute requires solicitation to touch "another" and then contrasts three parties—the child, the offender (who solicits the touching), and "another" (who receives the touching)—our Supreme Court has said that the "another" person who is touched in the soliciting form of this offense must be a *third party*, not the defendant who solicits the act. *State v. Johnson*, 283 Kan. 649, 654, 156 P.3d 596 (2007); see *State v. Herrrera*, 41 Kan. App. 2d 215, 224, 202 P.3d 68 (2009). There's no evidence that a third person was even present for the acts A.L. described Lacy did to her.

It's clear, then, that the evidence would never support the soliciting charge the State brought against Lacy. Presumably the State hopes that once the case returns to the district court, that court will allow the State to amend its charge to one the facts would support.

But the time for amending a charge is before the jury reaches a verdict, not after conviction, appeal, and remand to the trial court. A Kansas statute, K.S.A. 22-3201(e), puts that limit on the State's charging authority: "The court may permit a complaint or information to be amended *at any time before verdict . . . .*" (Emphasis added.) This provision may be the reason the State's brief didn't explicitly mention a plan to amend the charging document if we sent the case back for a new trial—the time for amending the complaint ended long ago.

The State cites one unpublished opinion from our court in support of its argument that we should treat the problem before us as merely a jury-instruction error and send the case back for a new trial. But that case, *State v. Montes*, No. 104,563, 2012 WL 307532

7

(Kan. App. 2012) (unpublished opinion), is not similar to this one. In *Montes*, the defendant was charged with conspiracy to manufacture methamphetamine, and the State had evidence to support that charge. But the jury instruction alleged a different act in support of the conspiracy than the one charged in the complaint. 2012 WL 307532 at *2. Our court sent the case back for a new trial, but the State had presented evidence that could have supported the charge in the complaint. 2012 WL 307532 at *1-2. So the evidence wasn't insufficient to support the charge—the jury simply hadn't been given correct instructions to use in determining whether the State had proven the charge set out in the complaint.

Here, as we've explained, the State's evidence never supported the charge made in the complaint. It still won't support that charge if we send it back for retrial. In any case, when the evidence at trial doesn't support the crime charged in the State's complaint, the proper remedy is to reverse the conviction without sending the case back for a new trial. See *State v. Fitzgerald*, 308 Kan. ___, ___ P.3d ___, 2018 WL 3798389, at *5 (No. 112,492 filed August 10, 2018); *State v. Scott*, 285 Kan. 366, Syl. ¶ 2, 171 P.3d 639 (2007). There's one potential exception: Where there wasn't sufficient evidence to support the conviction but the evidence presented would have supported a conviction for a lesser-included offense, the appellate court may send the case back for further proceedings on the lesser-included offense. *Herrera*, 41 Kan. App. 2d at 225. But that has no application here. No lesser-included offenses were submitted to the jury and the State has not argued on appeal that any might have been appropriate.

Having decided the case, we return to our consideration of the prosecutor's role and focus now on that role as this case progressed. There were several points along the way when one of the prosecutors might have recognized and corrected the error:

- When the initial charging decision was made, a prosecutor could have compared the elements of the solicitation offense against the statements A.L. had made.

8

- When the State presented evidence at the preliminary hearing from Latifah about what A.L. had said took place, a prosecutor could have recognized that the evidence supported only the touching form of aggravated indecent liberties.

- When the trial prosecutor prepared the State's proposed jury instructions, she could have noted that there are different proposed instructions for the touching offense and the soliciting offense. And when the prosecutor submitted instructions that matched only the touching offense, she could have noticed that the charging document did not allege that offense.

- When the prosecutor prepared for trial, she might have rechecked the charging document to be sure that there was no need to amend it.

- At trial, when the evidence was presented, the prosecutor might have recognized that it did not support the charge described in the charging document.

- Even when preparing for closing argument, the prosecutor might have double-checked the charging document against the evidence presented and realized that they didn't match—at that point, still potentially in time to amend the charge under K.S.A. 22-3201(e).

We recognize, of course, that the prosecutor wasn't the only one in a position to catch this error. While the defense counsel certainly has no duty to point out errors the prosecution might make, the district court should have noted this problem when the State presented evidence at the preliminary hearing. That evidence didn't match the charge the State had made. But neither the prosecutor nor the defense lawyer made any argument to the court about the sufficiency of that evidence, and the court (incorrectly) found the evidence sufficient to support the soliciting version of aggravated indecent liberties.

The reason we have provided this discussion is so that this case might be a useful teaching tool about the need to take care at each step of a criminal proceeding to get things right. We also recognize that mistakes are an inherent part of every human

9

endeavor. But when prosecutors (and trial judges) miss an error like this, sometimes the error can't be fixed.

We understand that the result in this case may seem unjust, especially to A.L. and her family. Our justice system simply has rules that, by design, sometimes prevent the correction of errors. That's in part because "concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system." *Schlup v. Delo*, 513 U.S. 298, 325, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). And it reflects "a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free." *In re Winship*, 397 U.S. 358, 372, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (Harlan, J., concurring); see *Schlup*, 513 U.S. at 325. On balance, these rules serve us well.

We reverse the district court's judgment, which removes the defendant's conviction and vacates the defendant's sentence.