NOT DESIGNATED FOR PUBLICATION

No. 125,691

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN C.T. BOESE,
*Appellant*.


MEMORANDUM OPINION


Appeal from Marion District Court; SUSAN C. ROBSON, judge. Submitted without oral argument. Opinion on remand filed February 21, 2025. Conviction reversed and sentence vacated.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before HILL, P.J., MALONE and ISHERWOOD, JJ.


MALONE, J.:  John C.T. Boese appeals from his conviction following a bench trial for violation of a protective order. He contends his conviction must be reversed because it is not supported by sufficient evidence. More specifically, he asserts the State presented insufficient evidence because the proof departed from the charging document:  The State charged Boese under K.S.A. 2020 Supp. 21-5924(a)(1)—covering the violation of a protection from abuse order—but only presented evidence that he violated K.S.A. 2020 Supp. 21-5924(a)(6)—covering the violation of a protection from stalking, sexual assault, or human trafficking order.

1

Boese is correct under controlling legal precedent from the Kansas Supreme Court. The language of the charging document controls the criminal prosecution, and a defendant can be convicted only of the crime he or she is charged with committing. Because the State failed to prove the crime it charged Boese with committing and did not seek to amend its complaint to conform to the evidence, we must reverse Boese's conviction for insufficient evidence.

This court originally filed a memorandum opinion reversing Boese's conviction for insufficient evidence on December 15, 2023. On November 27, 2024, the Kansas Supreme Court granted the State's petition for review, summarily vacated this court's memorandum opinion, and remanded for reconsideration in light of *State v. Reynolds*, 319 Kan. 1, 552 P.3d 1 (2024). This court ordered the parties to file supplemental briefs addressing how the holding in *Reynolds* affects the issue raised by Boese in this appeal and this court's prior memorandum opinion. After considering the supplemental briefing, and for reasons we will endeavor to explain in this opinion, we conclude the holding in *Reynolds* does not affect the outcome of this appeal, and we reaffirm our prior memorandum opinion reversing Boese's conviction for insufficient evidence.

FACTUAL AND PROCEDURAL BACKGROUND

Boese and M.M. had three children together and a rocky, sometimes-loving-sometimes-violent relationship. Things came to a head in January 2021, when M.M. decided she needed to get away from Boese. Over the next several months, Boese sent her constant, unwanted emails, texts, and voice messages. By March, M.M. did not have anywhere else to go and began to live with Boese's mother. Boese's mother recalled that M.M. came to live with her after Boese threatened her life with a gun.

On the night of April 8, 2021, M.M. received several texts from Boese stating that he would kill himself or kill her. M.M. was frightened and called the sheriff to request a

2

welfare check on Boese. The next day, M.M. received a temporary order of protection from stalking, sexual assault, or human trafficking against Boese. In seeking the order, she listed Boese's mother's home as her home address.

A week after the protection order was granted, Boese texted his mother; each of his messages referenced M.M. One of his messages stated in part:

"She can lie and convince friends and family she's abused tell the most outrageous lies and get the most ignorant people to believe them but when you swear out a PFA you can't make up outrageous life destroying lies so people will feel sorry for her that is a crime and Criminal . . . .
"Not going to bother you anymore please don't take out a PFA with your friend under the pretense I'm pointing guns at your head all the time that would be another crime & a prosecutable criminal act."

Boese's mother was upset and alarmed by her son's texts, and she showed them to M.M. They agreed that Boese was not in a mentally stable place and feared for their safety. A month later, Boese sent more text messages to his mother. The substance of these messages frightened Boese's mother and M.M. more. They believed Boese was possibly going to do something and felt they needed to be on guard and keep their doors locked. Although Boese did not send the messages to M.M., his mother shared them with her because she "knew the situation, and [M.M.] needed to know, for her own protection, . . . everything that was going on."

On June 1, 2021, Boese sent more frightening messages to his mother, which stated that he would celebrate his maternal grandmother's birthday by stepping on baby chicks and pointing guns at people's heads. She grew even more alarmed and took his statements to be credible threats. She recalled, "I know when my son's being sarcastic. I know when he is being threatening and trying to be intimidating and whatnot." Two days later, he texted yet again; Boese's mother shared the messages with M.M. because it

3

seemed that Boese was blaming her for losing his job. On July 20, 2021, the district court issued a final protection from stalking, sexual assault, or human trafficking order against Boese. The final order remained effective until July 14, 2022.

On August 2, 2021, the State charged Boese with violation of a protection order under K.S.A. 2020 Supp. 21-5924(a)(1), (b)(1), a class A misdemeanor, alleging he had contacted M.M. either directly or indirectly in violation of the protective order. More specifically, the complaint alleged that Boese willfully and knowingly violated "[a] *protection from abuse order* issued pursuant to K.S.A. 60-3101 et seq." (Emphasis added.) The State later amended the complaint, changing the charge to specify: "John Boese, sent messages to [his mother], who the protected person, [M.M.], is residing with . . . ." The amended complaint still identified the order Boese violated as a protection from abuse order and cited K.S.A. 2020 Supp. 21-5924(a)(1), (b)(1) as the statutory basis for the charge.

The district court held a bench trial on June 24, 2022. At the State's request, the district court took judicial notice of the temporary order of protection from stalking, sexual assault, or human trafficking, as well as the final order. Both Boese's mother and M.M. testified about the text messages from Boese, and the State introduced copies of four of the texts as exhibits. After hearing the evidence, the district judge found that Boese "knowingly violated the PFS, and I find him guilty of this." The district court sentenced Boese to serve 12 months in the county jail but granted him probation for 12 months. Boese timely appealed the district court's judgment.

DID THE STATE PRESENT SUFFICIENT EVIDENCE TO SUPPORT BOESE'S CONVICTION?

Boese argues the State presented insufficient evidence to support his conviction because it charged him with violation of a protection from abuse order under K.S.A. 2020 Supp. 21-5924(a)(1) but the evidence it presented only supports that he violated a

4

protection from stalking order under K.S.A. 2020 Supp. 21-5924(a)(6). In other words, he contends the State charged him with one form of violation of a protective order and then it proved that he committed another, leaving no evidence to support the charged crime. Boese relies on *State v. Fitzgerald*, 308 Kan. 659, 666, 423 P.3d 497 (2018), a case in which the Kansas Supreme Court found insufficient evidence to support a conviction because the evidence proved a crime the defendant was not charged with committing.

For its part, the State asserts that Boese is inappropriately arguing that the complaint was defective, not addressing the sufficiency of the evidence. Alternatively, it contends that Boese's reliance on *Fitzgerald* is misplaced because K.S.A. 2020 Supp. 21-5924 presents options within a means, not alternative means of committing the offense. The State asserts that the language in its complaint against Boese was broad enough to encompass a conviction under K.S.A. 2020 Supp. 21-5924(a)(6) instead of subsection (a)(1).

When a defendant challenges the sufficiency of the evidence to support a conviction, an appellate court must examine the evidence in a light most favorable to the State and determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In performing this review, an appellate court will not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *Fitzgerald*, 308 Kan. at 666. Boese's case does not present a typical challenge to the sufficiency of the evidence. We are not concerned here with whether the State's evidence proved that Boese committed a crime—it did. We must instead decide whether the State proved the crime it charged Boese with committing. A defendant need not challenge the sufficiency of the evidence before the district court to preserve the issue for appeal. *State v. Farmer*, 285 Kan. 541, Syl. ¶ 1, 175 P.3d 221 (2008).

The State first contends that under K.S.A. 2022 Supp. 22-3208(4), Boese "waived any defenses and objections based upon any claimed defects in the amended complaint."

5

But this assertion is misplaced. Boese does not argue that the complaint was defective in any way, it simply charged him with a different crime than the State ultimately proved. Both the complaint and the amended complaint contained an accurate description of one means of committing a violation of a protective order with an accompanying citation to the statutory subsection governing that means. Because Boese's argument concerns the sufficiency of the evidence to support his conviction—and not any defect in the complaint—the State's waiver argument under K.S.A. 2022 Supp. 22-3208(4) fails.

We now turn to Boese's insufficiency of the evidence argument. As described below, the State's unfortunate error here is not novel. Many cases have addressed discrepant charging documents leading to deficiencies in the evidence presented at trial. See, e.g., *Fitzgerald*, 308 Kan. 659; *State v. Laborde*, 303 Kan. 1, 360 P.3d 1080 (2015); *State v. Dickson*, 275 Kan. 683, 69 P.3d 549 (2003); *State v. Lacy*, 56 Kan. App. 2d 327, 429 P.3d 245 (2018); *State v. Arita*, No. 124,928, 2023 WL 3912867 (Kan. App. 2023) (unpublished opinion). The core principle behind these decisions is that the State must prove the crime it charges. See *State v. Ward*, 307 Kan. 245, 259-60, 408 P.3d 954 (2018) (finding that the State failed to prove crimes charged, even if it may have proved another crime). As the Kansas Supreme Court has explained, prosecutions are based on the charging document—whether by complaint, indictment, or information—and that charging document "sets the outer limits of the conviction or convictions that can result." *Fitzgerald*, 308 Kan. at 665-66.

In *Fitzgerald*, the State charged Fitzgerald with aggravated criminal sodomy by causing the victim, a child under 14 years old, to engage in sodomy with another person in violation of K.S.A. 2017 Supp. 21-5504(b)(2). But at trial, the State proved that Fitzgerald personally engaged in sodomy with the victim, as if Fitzgerald was charged under K.S.A. 2017 Supp. 21-5504(b)(1). The State presented no evidence that Fitzgerald caused the victim to engage in sodomy with another person. Our Supreme Court emphasized that criminal prosecutions depend on the charging document. Based on this

6

fact, the court found that it was compelled to reverse Fitzgerald's conviction as unsupported by sufficient evidence of the crime the State charged Fitzgerald with committing. 308 Kan. at 666. The court's holding was clear: "If the State charges a defendant with aggravated criminal sodomy under K.S.A. 2017 Supp. 21-5504(b)(2) but proves aggravated criminal sodomy under K.S.A. 2017 Supp. 21-5504(b)(1), the defendant's conviction is reversible for insufficient evidence." 308 Kan. 659, Syl.

Here, the State's initial complaint charged Boese with one count of violation of a protection order under K.S.A. 2020 Supp. 21-5924(a)(1), alleging he "willfully and unlawfully violate[d] a Court order, to-wit: *A protection from abuse order* issued pursuant to K.S.A. 60-3101 et seq." (Emphasis added.) The State subsequently filed an amended complaint, which specified that Boese had violated the protective order by sending messages to his mother, who M.M. was residing with—but it did not change the statutory subsection, K.S.A. 2020 Supp. 21-5924(a)(1), nor the corresponding statutory language that he had violated a protection from abuse order.

At trial, however, the parties proceeded with the case as though Boese had been charged with violating a protection from stalking order. At the State's request, the district court took judicial notice of the temporary order of protection from stalking, sexual assault, or human trafficking, as well as the final order. Both Boese's mother and M.M. testified about the text messages from Boese, and the State introduced copies of two of the texts as exhibits. After hearing the evidence, the district judge found that Boese "knowingly violated the PFS, and I find him guilty of this." The problem here is that this is not the crime Boese was charged with committing.

Under K.S.A. 2020 Supp. 21-5924(a)(1), the State was required to prove that Boese knowingly violated "[a] protection from abuse order issued pursuant to K.S.A. 60-3105, 60-3106 or 60-3107, and amendments thereto." But M.M. never obtained a protection from abuse order under K.S.A. 60-3105, 60-3106, or 60-3107. Instead, she

7

received protection from stalking, sexual assault, or human trafficking orders under K.S.A. 60-31a05 and K.S.A. 60-31a06. Although the State alleges that Boese was sufficiently put on notice because he knew what type of protection order he violated, it nevertheless charged him with violating a protection from abuse order under K.S.A. 2020 Supp. 21-5924(a)(1), not for violating a protection from stalking order under K.S.A. 2020 Supp. 21-5924(a)(6).

To be clear, the problem here is not simply that the statutory citation in the amended complaint for the basis of the charge is inaccurate. The problem is that the amended complaint charged Boese with violating a protection from abuse order, but the State presented no evidence at trial that he did so. And even though the State presented sufficient evidence that Boese violated a protection from stalking order—which would have supported a conviction under subsection (a)(6)—that evidence was not sufficient to support the crime that Boese was charged with committing under K.S.A. 2020 Supp. 21-5924(a)(1).

In its effort to defend Boese's conviction, the State argues that the subsections included in K.S.A. 2020 Supp. 21-5924(a)(1)-(6) are simply options within a means, not alternative means, of committing the crime of violation of a protective order. Under this rationale, the State asserts that the type of protective order Boese violated is immaterial: "Here [Boese's] actions may not have violated the protection from abuse option within means, but he did knowingly violate the protection from stalking statute option within means." Put simply, the State argues that the gravamen of the offense is simply that Boese knowingly violated a protective court order, and that the type of order that had been issued under the statute's six subsections is an immaterial option within a means.

No Kansas appellate courts have addressed whether the violation of a protective order statute, K.S.A. 2022 Supp. 21-5924(a)(1)-(6), contains alternative means. To interpret the statute and determine whether it contains alternative means, this court must

look to the text, giving effect to its plain and unambiguous language. See, e.g., *State v. Arnett*, 307 Kan. 648, 653, 413 P.3d 787 (2018). In *State v. Brown*, 295 Kan. 181, 194, 284 P.3d 977 (2012), the Kansas Supreme Court explained that in examining legislative intent to determine whether a statute contains alternative means,

> "a court must determine for each statute what the legislature's use of a disjunctive 'or' is intended to accomplish. Is it to list alternative distinct, material elements of a crime—that is, the necessary *mens rea, actus reus*, and, in some statutes, a causation element? Or is it to merely describe a material element or a factual circumstance that would prove the crime? The listing of alternative distinct, material elements, when incorporated into an elements instruction, creates an alternative means issue demanding super-sufficiency of the evidence. But merely describing a material element or a factual circumstance that would prove the crime does not create alternative means, even if the description is included in a jury instruction."

Stated more succinctly, "[i]f the statute lists 'alternative, distinct, material elements' of a crime, then it creates alternative means." *State v. Cottrell*, 310 Kan. 150, 160, 445 P.3d 1132 (2019). Whereas "[o]ptions within a means describe secondary matters that 'do not state additional and distinct ways of committing the crime.'" *State v. Jordan*, 317 Kan. 628, Syl. ¶ 2, 537 P.3d 443 (2023). Our Supreme Court has noted that "'[t]ypically . . . a legislature will signal its intent to state alternative means through structure, separating alternatives into distinct subsections of the same statute.'" *State v. Davis*, 312 Kan. 259, 265, 474 P.3d 722 (2020).

The violation of a protective order statute, K.S.A. 2020 Supp. 21-5924, contains six types of protective court orders that can be violated:

> "(a) Violation of a protective order is knowingly violating:
> (1) A protection from abuse order issued pursuant to K.S.A. 60-3105, 60-3106 or 60-3107, and amendments thereto;

9

(2) a protective order issued by a court or tribunal of any state or Indian tribe that is consistent with the provisions of 18 U.S.C. § 2265, and amendments thereto;

(3) a restraining order issued pursuant to K.S.A. 2020 Supp. 23-2707, 38-2243, 38-2244 or 38-2255, and amendments thereto, or K.S.A. 60-1607, prior to its transfer;

(4) an order issued in this or any other state as a condition of pretrial release, diversion, probation, suspended sentence, postrelease supervision or at any other time during the criminal case that orders the person to refrain from having any direct or indirect contact with another person;

(5) an order issued in this or any other state as a condition of release after conviction or as a condition of a supersedeas bond pending disposition of an appeal, that orders the person to refrain from having any direct or indirect contact with another person; or

(6) a protection from stalking, sexual assault or human trafficking order issued pursuant to K.S.A. 60-31a05 or 60-31a06, and amendments thereto."

Each of these six subsections sets forth different elements of the offense depending on what kind of order the State alleges the defendant knowingly violated. The six types of protective orders are presented as a list, separated by semi-colons and an "or" from subsection (a)(1) to (a)(6). The statutory structure signals that the Legislature intended six separate and alternative means of committing the crime of violation of a protective order.

Depending on which type of order the defendant is alleged to have violated, the State must prove a distinct mens rea and actus rea because each requires an entirely different showing. Each subsection requires a knowing violation of a particular type of protective order, each of which is provided in distinct statutes and have differing requirements. Moreover, the mens rea and actus rea of a charge under each of the subsections requires a particular type of proof based on the type of order that is alleged to have been violated. As such, K.S.A. 2020 Supp. 21-5924 presents six alternative means of committing the offense, as delineated in subsections (a)(1) through (a)(6).

10

The State's argument that its failure to charge Boese under the correct subsection of the statute does not matter because the statute does not present alternative means of committing the crime is unavailing. Likewise, the State's argument that the language of the amended complaint against Boese was broad enough to encompass a conviction under subsection K.S.A. 2020 Supp. 21-5924(a)(6) instead of subsection (a)(1) lacks merit. The State alleged that Boese violated a protection from abuse order but never proved that he did so. Boese can be convicted only of the crime he was charged with committing. Thus, we must reverse Boese's conviction for insufficient evidence and vacate his sentence.

RECONSIDERATION IN LIGHT OF *REYNOLDS*

We now reconsider our original ruling in light of *Reynolds*, as ordered by the Kansas Supreme Court. To assist us in following the remand order, we directed the parties to file supplemental briefs addressing how the holding in *Reynolds* affects the issue raised by Boese in this appeal and this court's prior memorandum opinion. The first thing we notice is that both parties seem to have difficulty in arguing how *Reynolds* impacts this case. Boese argues that *Reynolds* "is inapplicable to the instant case as it is distinguishable from the facts of this case." The State frames the case as presenting an alternative means, jury instruction issue, and argues "there was no clear error in the district court's finding of guilt under the alternative means of violation of a protective order." We will begin our analysis by summarizing *Reynolds*.

The State charged Ryan David Reynolds with several crimes including aggravated burglary. At trial, the district court's jury instructions referred to both a *building* and a *dwelling* as the location where the offense was committed. The facts of the case established that Reynolds broke into his estranged wife's home through a downstairs door used for her salon business. But Reynolds proceeded upstairs to the living area, where he confined his wife, their young daughter, and his wife's sister-in-law, threatening to kill everyone inside. Our Supreme Court agreed with Reynolds that the evidence presented at

11

trial did not support the building alternative for aggravated burglary and supported only the dwelling alternative for committing the crime. In other words, there was insufficient evidence to support each alternative means of committing the crime. Because the jury instruction created an alternative means error, existing Kansas caselaw would have required the court to reverse Reynolds' aggravated burglary conviction and remand for a new trial. See *State v. Wright*, 290 Kan. 194, 201-07, 224 P.3d 1159 (2010), *disapproved on other grounds by State v. Brooks*, 298 Kan. 672, 317 P.3d 54 (2014) (analyzing alternative means error as structural error not subject to harmless error analysis).

But the *Reynolds* court overruled the *Wright* super-sufficiency test for addressing alternative means errors, replacing it with a traditional instructional error analysis, including a determination on whether any error was harmless. The court held:

> "*If a defendant claims a jury instruction contained an alternative means error*, the reviewing court must consider whether the instruction was both legally and factually appropriate. The court will use unlimited review to determine whether the instruction was legally appropriate and will review the evidence in the light most favorable to the requesting party when deciding whether the instruction was factually appropriate. Upon finding error, the court will then determine whether that error was harmless, using the test and degree of certainty set forth in *Plummer*, 295 Kan. 156, and *Ward*, 292 Kan. 541." (Emphasis added.) *Reynolds*, 319 Kan. at 17.

In overruling *Wright* and its progeny, the *Reynolds* court also eliminated the need for Kansas courts to distinguish between alternative means and options within a means when presented with alternative means arguments. 319 Kan. at 21. This distinction had been developed and applied over the years to limit the harsh result of requiring super-sufficiency to avoid reversal in alternative means cases. The traditional instructional error test is now applied whether the statutory elements of a crime present true alternative means or options within a means to commit the crime. 319 Kan. at 21.

So how does the holding in *Reynolds* affect Boese's case? We are struggling to see much application. *Reynolds* involves a defendant's claim that a jury instruction contained an alternative means error. The holding in *Reynolds* is limited to that situation. Boese had a bench trial. There were no jury instructions that created an alternative means error. The question presented here is whether the State proved the crime it charged Boese with committing—that is, whether there was sufficient evidence to support the conviction.

The core holding in *Reynolds*, modifying the instructional error analysis in alternative means cases, is irrelevant to the issue presented here. Moreover, any alternative means issue presented by the nature of the relevant criminal statute here, K.S.A. 21-5924(a)(1)-(6), is irrelevant because Boese did not have a jury trial. See *In re C.T.*, No. 107,841, 2012 WL 5205752 (Kan. App. 2012) (unpublished opinion) (finding alternative means analysis inapplicable when case is tried to a single fact-finder); *State v. Kennedy*, No. 106,728, 2012 WL 4678927 (Kan. App. 2012) (unpublished opinion) (same); *City of Pittsburg v. Witty*, No. 101,251, 2009 WL 2436695 (Kan. App. 2009) (unpublished opinion) (same).

This case does not present an alternative means issue. The only reason our original memorandum opinion discussed the subject was to address the State's argument that the subsections included in K.S.A. 2020 Supp. 21-5924(a)(1)-(6) are options within a means, not alternative means, of committing the crime of violation of a protective order. If *Reynolds* applies at all to Boese's case, it is to establish that courts no longer need to distinguish between alternative means or options within a means to commit a crime. The State's supplemental brief glosses over the fact that Boese had a bench trial and emphasizes that the trial judge reviewed some applicable PIK instructions before finding Boese guilty. But Boese's case does not involve a claim that a jury instruction contained an alternative means error, which is the claim the defendant made in *Reynolds*.

13

The holding in *Reynolds* does not address the fundamental reason we believe we must reverse Boese's conviction—that the State presented insufficient evidence to support the conviction. The State charged Boese with violating a protection from abuse order but offered no evidence at trial to prove that crime. The State proved only that Boese violated a protection from stalking order—a crime he was not charged with committing. *Fitzgerald* holds that the State must prove the crime it charges the defendant with committing and its failure to do so requires reversal of the defendant's conviction, even if the State may have proved another crime. 308 Kan. at 665-66. *Reynolds* does not discuss, let alone overrule, the holding in *Fitzgerald* and other cases supporting Boese's claim that the evidence was insufficient to support his conviction. See *Ward*, 307 Kan. at 259-60; *Laborde*, 303 Kan. at 8; *Dickson*, 275 Kan. at 697; *Lacy*, 56 Kan. App. 2d at 334.

The State argues that the holding in *Reynolds* now allows us to apply harmless error analysis to the flaw in Boese's prosecution. We disagree. *Reynolds* allows a court to determine whether an *instructional* error was harmless. But when the State charges a defendant with committing only one crime and offers insufficient evidence to prove that crime, harmless error analysis cannot be applied to save the conviction.

To sum up, whether K.S.A. 21-5924(a)(1)-(a)(6) presents alternative means of committing the crime of violation of a protective order, the State's error here related to the sufficiency of the evidence to support the crime charged—not an instructional error. We reaffirm our prior ruling unless and until our Supreme Court clarifies that *Fitzgerald* is no longer good law. The State charged Boese with violating a protection from abuse order but never proved that crime. Boese can be convicted only of the crime he was charged with committing. The opinion in *Reynolds* does not impact that outcome.

Conviction reversed and sentence vacated.

14