IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,410

STATE OF KANSAS,
*Appellee,*

v.

TANNER SCOTT MORA,
*Appellant.*

SYLLABUS BY THE COURT

1.

In prosecutions for an attempted crime—when the statute defining the crime does not include an attempt as a means of violating that statute—the default rule in K.S.A. 2020 Supp. 21-5301(a) requires the State to prove the defendant had the specific intent to commit the intended crime, even if that crime as a completed crime does not require specific intent.

2.

A defendant prosecuted under an aiding and abetting theory for a specific intent crime—including the crime of attempt under K.S.A. 2020 Supp. 21-5301(a)—must have the same specific intent to commit the crime as the principal.

3.

A person who purchases or obtains a controlled substance for personal use cannot be convicted of distribution (or attempted distribution) of a controlled substance if there is no evidence that the person attempted or intended to later distribute that substance.

1

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Opinion filed May 20, 2022. Convictions reversed and sentence vacated.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.:  A jury convicted Tanner Scott Mora of two alternative counts of felony murder after a man—from whom Mora and his codefendant, Ashantis Bledsoe, were attempting to purchase marijuana—was shot and killed by Bledsoe during a drug deal turned robbery gone wrong. Mora received a hard 25 sentence for the first felony-murder conviction (underlying felony of attempted aggravated robbery), and the district court held the second conviction (underlying distribution of marijuana) in abeyance. Mora directly appealed. Today we reverse both of Mora's convictions because we find that they are not supported by sufficient evidence.

FACTS

Mora lived with a roommate, Felicia Cornman, who worked at a Wichita Burger King. Mora was unemployed and would sometimes accompany Cornman to her shifts to hang out and use the Wi-Fi. Cornman was dating her Burger King co-worker, Ashantis Bledsoe, and Mora had met Bledsoe on a few occasions when he would come with Cornman to work.

Mora accompanied Cornman to Burger King one night in February 2019, and Bledsoe showed up during her shift. The two men spoke to one another, then Mora

2

approached Cornman and asked if they could borrow her car. Cornman agreed, not knowing where they planned to go. The men were only supposed to be gone for 20 minutes but did not return for close to 2 hours.

Meanwhile, that same night Lorenzo Wade—who police later determined was a distributer of marijuana—was at a friend's apartment near Genesis Health Clubs, and he began exchanging several phone calls and text messages with a number later traced to Mora's phone. Wade told his friend that he was going to meet someone at Genesis and would be "right back." The final texts showed that Wade said "one sec bro. Throwing in extra. Was waiting for you to get close." Mora's phone quickly responded, "we in parking lot waiting," then Wade replied "gotcha. I see you, hol' up, Brody."

When Wade got into the backseat, Bledsoe pulled a gun, turned around, and demanded that Wade "give [him] the weed." Wade "kind of laughed about it," saying, "I'm not giving you that." Bledsoe then fired the gun at Wade. Wade's body fell out of the car, and Mora and Bledsoe sped away. When police arrived at the scene just a few minutes later, Wade was found dead on his back. His cell phone was in his coat pocket, and a clear plastic bag containing a green botanical substance was between his legs. No evidence of the amount of the substance was ever introduced at trial.

Two bullet fragments were recovered from Wade's body. The coroner identified 10 total entrance gunshot wounds, with 7 on his back, and determined that Wade's cause of death was multiple gunshots to the trunk. A crime scene investigator later located two bullet fragments in Cornman's car and a fired casing under the rear seat.

Lead Detective Ryan Schomaker, after examining Wade's phone, concluded that the large number of calls and text messages indicated that Wade regularly sold drugs. Schomaker concluded that the communications showed that Mora, Bledsoe, and Wade

3

were meeting up for a drug deal and that Wade was the distributer. Police were able to identify Mora as a suspect by investigating the phone number last used to text Wade. Twenty days after the shooting, police arrested Mora after pinning down his location based on data obtained from Tinder.

Cornman, in an interview with Detective Schomaker, said that Mora had told her he saw somebody get shot at Genesis and was considering turning himself in. She explained that Mora and Bledsoe "went to do a weed deal. And the guy would not give it up." When asked to clarify, Cornman explained that when Bledsoe told Wade to give them "free weed," Wade "laughed. So then he was shot." Mora told Cornman that Bledsoe was the shooter. Mora maintained that he did not realize that Bledsoe planned to rob Wade, as he thought that they were going to pay for the weed; but Bledsoe "was there to rob the guy." After the killing, Bledsoe warned Mora not to tell anyone.

The State charged Mora with two alternative counts of felony murder. Count one charged attempted aggravated robbery as the underlying felony and count two charged distribution of marijuana as the underlying felony. The jury convicted Mora on both counts. The district court entered judgment on both convictions, sentencing Mora to a hard 25 sentence on count one and holding count two in abeyance. Mora directly appeals.

DISCUSSION

Mora raises four allegations of error. First, he argues that the jury was given a legally inappropriate jury instruction, and this instruction, coupled with insufficient evidence of a specific intent to aid and abet the underlying attempted robbery, amounts to reversible error. Second, he asserts that there was insufficient evidence of the underlying felony of distribution of marijuana to support his second felony-murder conviction. Third, he claims that his right to present a defense was violated because the district court

4

excluded admissible hearsay statements. Finally, Mora argues the district court should have merged his two convictions instead of holding one in abeyance.

*A clearly erroneous jury instruction, coupled with insufficient evidence of the underlying felony, requires reversal of Mora's first felony-murder conviction.*

Mora's first felony-murder conviction was based on the underlying felony of attempted aggravated robbery under an aiding and abetting theory of liability. Mora argues that a clearly erroneous instructional error, coupled with insufficient evidence of a specific intent to aid and abet the attempted robbery, warrants reversal of this conviction.

We address the instructional claim first because it bears directly on the reason the jury convicted Mora on what we then conclude was insufficient evidence. We first apply our familiar four-step analysis in reviewing an alleged instructional error:

> "(1) the court considers the issue's reviewability from both jurisdiction and preservation viewpoints, employing an unlimited standard of review; (2) the court determines whether the instruction was legally appropriate, using an unlimited review; (3) it determines whether sufficient evidence existed, when viewed in the light most favorable to the requesting party, to support the instruction; and (4) if the court finds error, it then must decide whether the error was harmless, using the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011).
>
> "'The first step affects the last one because an unpreserved issue will be considered for clear error, i.e., the error may be considered harmless unless the party claiming it can convince the court the jury would have reached a different verdict without the error.'" *State v. Gonzalez*, 311 Kan. 281, 290-91, 460 P.3d 348 (2020).

We apply the clear error standard here because Mora did not raise this issue below. K.S.A. 2020 Supp. 22-3414.

5

Mora argues that the following instruction given to the jury is clearly erroneous:

"Instruction No. 7

"A person is criminally responsible for a crime committed by another if the person, either before or during its commission, and with the mental culpability to commit the crime intentionally aids the other person to commit the crime.

"*The person who is responsible for a crime committed by another is also responsible for any other crime committed in carrying out or attempting to carry out the intended crime, if the person could reasonably foresee the other crime as a probable consequence of committing or attempting to commit the intended crime.*

"All participants in a crime are equally responsible without regard to the extent of their participation. However, mere association with another person who actually commits the crime or mere presence in the vicinity of the crime is insufficient to make a person criminally responsible for the crime." (Emphasis added.)

This three-paragraph instruction is contained in PIK Crim. 4th 52.140. The notes to that PIK state that the middle paragraph "should not be used for a specific-intent crime for which defendant is charged on an aiding and abetting theory" based on *State v. Overstreet*, 288 Kan. 1, 200 P.3d 427 (2009). In *Overstreet*, we held that "for a defendant to be convicted of a specific-intent crime on an aiding and abetting theory, that defendant must have the same specific intent to commit the crime as the principal." 288 Kan. at 13. Mora argues that because he was charged with attempted aggravated robbery under an aiding and abetting theory, the State was required to prove he had the specific intent to commit robbery, rendering the second paragraph requiring foreseeability clearly erroneous.

We exercise unlimited review over questions of statutory interpretation. *State v. Scheuerman*, 314 Kan. 583, 587, 502 P.3d 502 (2022). We likewise exercise unlimited review in determining whether a criminal statute requires general or specific intent. *State v. Kershaw*, 302 Kan. 772, 776, 359 P.3d 52 (2015). In construing the statutes, "'we begin with the plain language of the statute, giving common words their ordinary meaning.'" *Scheuerman*, 314 Kan. at 587.

Our first step in evaluating whether a crime is one of general or specific intent is to examine whether the plain language of the statute defining the crime "identifies or requires a further particular intent which must accompany the prohibited acts." *State v. Cantrell*, 234 Kan. 426, Syl. ¶ 7, 673 P.2d 1147 (1983). The language of the aggravated robbery statute does not require a further particular intent, meaning that the completed crime of aggravated robbery is a general intent crime. K.S.A. 2020 Supp. 21-5420; see *State v. Mattox*, 305 Kan. 1015, 1025, 390 P.3d 514 (2017). But an attempt to commit a crime is a separate offense that is created and defined by K.S.A. 2020 Supp. 21-5301(a). *State v. Horn*, 288 Kan. 690, Syl. ¶ 2, 206 P.3d 526 (2009).

K.S.A. 2020 Supp. 21-5301(a) states: "An attempt is any overt act toward the perpetration of a crime done by a person *who intends to commit such crime* but fails in the perpetration thereof or is prevented or intercepted in executing such crime." (Emphasis added.) K.S.A. 2020 Supp. 21-5301(a) thus plainly requires the State, when prosecuting an attempted crime, to prove that the defendant possessed the specific intent to commit the underlying offense. The plain language of that statutory provision does not provide an exception for crimes that, as a completed offense, would require a lower culpable state. Nor have we ever recognized such an exception in our caselaw. See, e.g., *State v. William*, 248 Kan. 389, 401, 807 P.2d 1292 (1991) (showing of specific intent required in a prosecution for attempted aggravated criminal sodomy even though aggravated criminal sodomy as a completed crime requires only general intent).

7

Rather, the Legislature has deliberately selected and designed certain criminal statutes to avoid application of K.S.A. 2020 Supp. 21-5301(a) by including "attempt" language in the statute governing the crime at issue. This results in K.S.A. 2020 Supp. 21-5301(a) operating as a default rule in situations where "the statute defining a crime does not include an attempt as a means of violating that criminal statute." *Horn*, 288 Kan. 690, Syl. ¶ 2. Compare K.S.A. 2020 Supp. 8-1567(a) (specifically describing the crime of driving under the influence as including "operating or *attempting to operate* any vehicle" [emphasis added]); K.S.A. 2020 Supp. 21-5421(a) (specifically describing terrorism as including both the commission of or "the attempt to commit" a terrorist act); K.S.A. 2020 Supp. 8-1568(a)(2) (specifically describing the crime of fleeing from a police officer as knowingly "flees *or attempts to elude* a pursuing police vehicle" [emphasis added]); with K.S.A. 2020 Supp. 21-5703 (criminalizing the manufacture of controlled substances but not specifying *attempted* manufacture of a controlled substance as a means of violating the statute, thereby indicating the Legislature intended that the crime of attempted manufacture be controlled by K.S.A. 2020 Supp. 21-5301[a]'s default rule).

We find the statutory language and design to be plain and unambiguous. And reading the statutes in this way comports with our directive that statutes relating to the same subject should be considered *in pari materia* to achieve consistent, harmonious, and sensible results whenever possible. *Pankratz Implement Co. v. Citizens Nat'l Bank*, 281 Kan. 209, 215, 130 P.3d 57 (2006).

In sum, in prosecutions for an attempted crime—when the statute defining the crime does not include an attempt as a means of violating that statute—the default rule in K.S.A. 2020 Supp. 21-5301(a) requires the State to prove the defendant had the specific intent to commit the intended crime, even if that crime would not require specific intent as a completed crime. As the Ninth Circuit has recognized, charging a defendant with an

8

attempted crime "involve[s] a degree of uncertainty regarding the defendant's purpose to commit the underlying crime—an uncertainty that is not present in the case of a principal who actually commits the crime." *United States v. Sayetsitty*, 107 F.3d 1405, 1412 (9th Cir. 1997). Because of this uncertainty, "it is reasonable to require proof of a specific intent that would not be required of one who completed the crime." 107 F.3d at 1412.

Because K.S.A. 2020 Supp. 21-5420—the statute governing the crime of aggravated robbery—does not include any "attempt" language, the Legislature intended the crime of attempted aggravated robbery to be controlled by the default rule in K.S.A. 2020 Supp. 21-5301(a). In other words, in a prosecution for attempted aggravated robbery the State must prove that the defendant had the specific intent to commit robbery. This remains true for a defendant prosecuted for this crime under an aiding and abetting theory. *Overstreet*, 288 Kan. at 13 (defendant prosecuted under an aiding and abetting theory must have the same specific intent to commit the specific intent crime as the principal).

This renders the middle paragraph in PIK Crim. 4th 52.140 legally inappropriate in Mora's case, because instructing the jury on foreseeability "would impermissibly relieve the State of the burden to prove a specific intent." *Mattox*, 305 Kan. at 1023 (citing *State v. Engelhardt*, 280 Kan. 113, 133, 119 P.3d 1148 [2005]); see also *Calhoun v. State*, 56 Kan. App. 2d 185, 186, 205, 426 P.3d 519 (2018) (permitting an aiding and abetting foreseeability instruction was clearly erroneous because it directly contradicted *Overstreet*).

Because we find the instruction to be legally inappropriate, we now consider whether the instruction constitutes clear error. "To declare clear error, a reviewing court must be firmly convinced the jury would have reached a different verdict without the error." *Gonzalez*, 311 Kan. at 293.

Mora argues that the erroneous instruction did affect the verdict because it allowed the jury to find Mora guilty simply by nature of "carrying out either underlying felony." Mora highlights the fact that during deliberations, the jury asked: "Can you please re-explain paragraphs #2 & 3 of instruction #7 with examples? We specifically need clarification regarding whether 'person' in paragraph #2 refers to Tanner Mora specifically or any reasonable person?" The district court simply responded: "Instruction 7 is a statement of the law. We are unable to elaborate or give examples." Mora argues that because the jury was clearly confused on how to apply the legally inappropriate instruction, the State escaped its burden of proving that Mora specifically intended to commit aggravated robbery.

This argument dovetails with Mora's second claim—that under a proper legal instruction, there would not have been sufficient evidence to support a finding that Mora specifically intended to commit aggravated robbery. A "challenge to the sufficiency of the evidence amounts to a posttrial claim that the State failed to meet its burden of proving each essential element" of the crime charged. *State v. Logsdon*, 304 Kan. 3, 21, 371 P.3d 836 (2016). We review a challenge to the sufficiency of the evidence by examining "the evidence in the light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Coble*, 312 Kan. 615, 626-27, 479 P.3d 201 (2021). We will not disturb a guilty verdict if there is substantial evidence supporting it—even if the evidence is entirely circumstantial—as a "'conviction of even the gravest offense may be sustained by circumstantial evidence. [Citations omitted.]'" *Logsdon*, 304 Kan. at 25.

Because the State's case proceeded on an aider and abettor theory, the State had to prove that Mora or another, for whose conduct he was criminally responsible, killed Wade and that the killing occurred while Mora or another, for whose conduct he was

criminally responsible, was trying to—and intended to—commit aggravated robbery. See *Gonzalez*, 311 Kan. at 287-88. There is no dispute as to whether there was sufficient evidence of an overt act in furtherance of the crime. Mora either arranged the meet or let Bledsoe use his phone to arrange the meet; Mora obtained Cornman's car to drive to Genesis; Mora waited in the parking lot for Wade to arrive and let Wade into the back seat; and Mora fled the scene after Wade had been shot. And here, the jury could easily have concluded that the robbery was not completed, given that the marijuana was left at the scene with Wade's body.

Our review is therefore narrowly focused on whether sufficient evidence supported a finding that Mora specifically intended to rob Wade. See *Gonzalez*, 311 Kan. 286; see also *State v. Betancourt*, 299 Kan. 131, 134, 322 P.3d 353 (2014) (to be guilty of aiding and abetting a defendant must willfully and knowingly associate himself or herself with the unlawful venture and willfully participate in it as he or she would in something he or she wishes to bring about or to make succeed). Our inquiry is guided by the following considerations:

> "Intent is usually proven by inference arising from circumstantial evidence because direct evidence of a defendant's state of mind is rarely available. And when that is the case, the question becomes whether the circumstantial evidence is substantial or sufficient enough to sustain the conviction. We have held that circumstantial evidence '"need not rise to that degree of certainty which will exclude any and every other reasonable conclusion."' 'But mere suspicion, however strong, is not enough and juries are not permitted to base verdicts of conviction on suspicion.'

> "An appellate court must determine whether the circumstances themselves are proved or inferred from other circumstances when a conviction is wholly based on circumstantial evidence. And a court must remain vigilant against inference stacking, which is impermissible because when the State asks a jury to make a presumption based

11

on another presumption, the State fails to carry its burden to present sufficient evidence. [Citations omitted.]" *Gonzalez*, 311 Kan. at 288.

The only evidence that addressed Mora's intent was Cornman's statements relaying her conversations with Mora after Wade's death. Yet her testimony did not support a showing that Mora willfully and knowingly intended to participate and assist Bledsoe in a robbery:

"[CORNMAN]: they were supposed to be buying some [weed] from the guy. When they got there, Ashantis had said, give me the weed. I guess the guy kind of laughed about it, and said, I'm not giving you that. And then Ashantis had . . . fired the gun.

"[THE STATE]: Okay. So the plan was, according to [Mora], they were going to buy weed?

"[CORNMAN]: Correct.

"[THE STATE]: But Ashantis said something about give me the weed?

"[CORNMAN]: Correct.

"[THE STATE]: As in, here, give it to me and I'll give you some money?

"[CORNMAN]: No. Ashantis was there to rob the guy.

"[THE STATE]: That's what [Mora] told you?

"[CORNMAN]: Well, that was—I mean, [Mora] *didn't know that that's what was going to happen* at the—at the, you know, when they went there until Ashantis did what he did. They were supposed to buy weed. *Ashantis was supposed to buy the weed from the guy.*

12

. . . .

"[CORNMAN]:  [Mora] was just there with Ashantis." (Emphases added.)

After the jury returned its guilty verdict, Mora moved for a judgment of acquittal, arguing that there was insufficient evidence to support the conviction. The district court, in denying Mora's motion, pointed to the circumstantial evidence of Mora's lack of a job, home, and car, and inferred that as a logical consequence, he did not have any money. The district court then made a second inference that because Mora had no money, if Mora was going to meet someone to do a drug deal, he must have necessarily intended to rob them because he would not have been able to obtain the marijuana any other way. But these inferences are not independently supported by any other facts. It is improper to stack these two inferences to prove that Mora intended to rob, because "it is impermissible for a case to rely upon the theory that presumption A leads to presumption B leads to presumption C leads to fact D." *State v. Banks*, 306 Kan. 854, 861, 397 P.3d 1195 (2017) (independent pieces of circumstantial evidence that "all separately point to" a fact are permissible, but stacking one presumption upon another to reach a fact is not).

Of course the district court was not the fact-finder in this case, so the district court's perception of the evidence is not dispositive. But we highlight the court's statements because they illuminate the threadbare evidence of Mora's intent presented to the jury. Certainly, proof of intent to aid or abet does not require direct evidence. See *State v. Edwards*, 209 Kan. 681, 686, 498 P.2d 48 (1972) ("The existence of criminal intent in aiding or abetting another to commit a crime may be presumed or inferred from circumstances surrounding the perpetration of the crime and is a fact question for jury determination."). However, the facts cited by the district court are the only facts that support a finding of specific intent—the record confirms that no other evidence,

13

circumstantial or otherwise, suggests that Mora had a specific intent to rob Wade—but those facts result from impermissibly placing one presumption upon another to reach a conclusion.

This, coupled with the jury's apparent confusion about how to interpret the legally inappropriate foreseeability instruction, firmly convinces us that the jury's verdict was affected. The instructional error kept the jury from making the requisite finding that Mora specifically intended to commit aggravated robbery, and we find the State's evidence was insufficient to support a finding that Mora specifically intended to commit aggravated robbery. Accordingly, we reverse Mora's felony-murder conviction in count one.

*Mora's second felony-murder conviction is reversed because the evidence was insufficient to support the underlying felony.*

Mora's second felony-murder conviction, charged in the alternative, was premised on the attempted underlying felony of distribution of marijuana. Mora argues that there was insufficient evidence to support this conviction.

We again apply our familiar sufficiency of the evidence standard of review as laid out above. *Logsdon*, 304 Kan. at 21. And to the extent this issue requires us to interpret statutes, again, we exercise unlimited review. *Scheuerman*, 314 Kan. at 587.

K.S.A. 2020 Supp. 21-5705(a)(4) provides that "[i]t shall be unlawful for any person to distribute or possess with the intent to distribute . . . any hallucinogenic drug," which includes marijuana. K.S.A. 2020 Supp. 65-4105(d)(17). "Distribute" is defined as "the actual, constructive or attempted transfer from one person to another of some item whether or not there is an agency relationship," and it "includes . . . sale, offer for sale or any act that causes some item to be transferred from one person to another." K.S.A. 2020 Supp. 21-5701(d).

14

As above, the conviction here on what we ultimately conclude is insufficient evidence was the direct result of the jury being given a faulty understanding of the law and of what the State was required to prove. In closing, the State asserted that "distribute" did not mean what the jurors thought it meant, and directed the jurors to not "use common sense terms." Instead, the State declared that "[p]eople on both ends share that responsibility" and that the crime of distribution of marijuana covers both the seller and the buyer. Mora moved for a posttrial judgment of acquittal, arguing that "[d]istribution is selling or distributing, not purchase or obtaining. . . . [I]t's clear the intent of the legislature was to be aimed at drug dealers, not drug purchasers." The district court denied the motion, agreeing with the State that "any act that causes an item to be transferred" met the definition of distribution.

Mora's trial took place in February 2020, before we published *State v. Crosby*, 312 Kan. 630, 479 P.3d 167 (2021), and *State v. Hillard*, 313 Kan. 830, 491 P.3d 1223 (2021). But *Crosby* and *Hillard* have since made clear that a defendant must be in possession of a substance before he or she can be convicted of distribution. They also support our conclusion today that a person who purchases or obtains a controlled substance for personal use cannot be convicted of distribution or attempted distribution in the absence of any evidence of an attempt or intent to thereafter distribute that substance. Such evidence may be circumstantial—flowing from reasonable inferences and possibly statutory presumptions. See K.S.A. 2020 Supp. 21-5705(e). But it must be present for there to be a conviction.

In *Crosby*, we stated:

> "Because K.S.A. 2019 Supp. 21-5705(a) includes the alternatives 'distribute' or 'possess with the intent to distribute' it raises the question whether a person can ever be convicted of distribution of a controlled substance without first possessing the controlled

15

substance as a matter of law. The most natural reading of the statute is that possession is an assumed prerequisite to distribution. See Black's Law Dictionary, *Distribute*, 597 (11th ed. 2019) ('To apportion; to divide among several. . . . To arrange by class or order. . . . To deliver. . . . To spread out; to disperse.'); Black's Law Dictionary, *Distribution*, 597 (11th ed. 2019) ('The act or process of apportioning or giving out.'). This reading gains added force when we look to the statutory definitions of distribution and possession.

"Distribute is defined as 'the actual, constructive or attempted transfer from one person to another of some item whether or not there is an agency relationship.' K.S.A. 2019 Supp. 21-5701(d). This 'includes, but is not limited to, sale, offer for sale or any act that causes some item to be transferred from one person to another.' K.S.A. 2019 Supp. 21-5701(d). Possession is defined as 'having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control.' K.S.A. 2019 Supp. 21-5701(q). We conclude it is impossible to 'transfer' a controlled substance 'from one person to another' without having 'joint or exclusive control over' the controlled substance first. See K.S.A. 2019 Supp. 21-5701(d); K.S.A. 2019 Supp. 21-5701(q). As a definitional matter, a person cannot transfer something one does not control. Therefore, in order to convict a defendant of distribution of a controlled substance under K.S.A. 2019 Supp. 21-5705(a), the State must present sufficient evidence of possession as a necessary part of the crime." 312 Kan. at 637-38.

And as we said even more recently in *Hillard*:

"In the State's formulation, the simple act of providing money to a middleman to acquire illicit substances would be sufficient to make one guilty of the crime of conspiracy to distribute a controlled substance, irrespective of any intended 'further transfers' after possession was achieved.

. . . .

16

". . . The jury was not presented with evidence as to Hillard's . . . intentions for the drug once she received it. Nor was the jury presented with evidence that the methamphetamine Goodpaster was paid to acquire would be distributed to anyone *but* Hillard by Goodpaster. *In other words, the State established that Hillard conspired to 'distribute' a controlled substance to herself only. In the absence of evidence establishing an actual agreement to 'distribute' the methamphetamine to anyone beyond herself, we find this to be insufficient to support a conviction* for conspiracy to distribute a controlled substance; at most, the State proved a conspiracy for Hillard to *possess* the methamphetamine." (Emphasis added.) 313 Kan. at 849-50.

The State argues that *Crosby* and *Hillard* are distinguishable because in those cases, the charged crimes were distribution of marijuana and conspiracy to distribute a controlled substance, respectively, whereas here—a felony-murder prosecution—the State need only prove *attempted* distribution, which would not necessarily require a showing that Mora ever gained joint or exclusive control over the marijuana. See K.S.A. 2020 Supp. 21-5402(a)(2) ("Murder in the first degree is the killing of a human being committed . . . in the commission of, *attempt to commit*, or flight from any inherently dangerous felony." [Emphasis added.]) We find the State's argument unpersuasive. By charging Mora with felony murder with the underlying inherently dangerous felony of distribution under K.S.A. 2020 Supp. 21-5705, *Crosby* and *Hillard* clearly dictate that the State had the burden to prove that Mora was attempting or had the intent to distribute the marijuana, rather than simply buying it for personal use from the distributor.

Viewing the evidence in the light most favorable to the State, we conclude that a rational fact-finder could not have found Mora guilty of distribution beyond a reasonable doubt when using the correct understanding of "distribute." The evidence was insufficient to prove that Mora was attempting or intending to distribute marijuana—in fact, such evidence was nonexistent. There was no evidence that Mora ever possessed any amount of marijuana himself, ever sold or offered marijuana for sale, arranged to meet anyone to sell marijuana to, or anything else that could suggest he was engaging in distribution.

17

Mora and Bledsoe never gained possession of the marijuana, and there was no evidence presented at trial as to the amount of marijuana they were attempting to purchase. We reject the State's contention that the mere act of Bledsoe and Mora consuming the marijuana together would satisfy the statutory definition of distribution. We conclude that while the State clearly presented sufficient evidence to established that Mora intended to obtain a controlled substance for personal use, there was no evidence at all that Mora intended to turn around and distribute that controlled substance to another. And the clear legal misunderstanding of the term "distribute" by the prosecutor and the trial court completely eliminated the State's burden to make such a showing.

Because we find that neither of Mora's convictions are supported by sufficient evidence, we need not address Mora's remaining claims of error. We reverse Mora's two convictions and vacate his sentence.