IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,006

STATE OF KANSAS,
*Appellee*,

v.

TIRRELL L. STUART,
*Appellant.*

SYLLABUS BY THE COURT

1.

Felony murder is the killing of a human being committed in the commission of, attempt to commit, or flight from an inherently dangerous felony. The State must establish all elements of the underlying felony to successfully prove felony murder.

2.

Simply acquiring a controlled substance in a drug buy is not enough to prove the recipient's guilt for distribution of that controlled substance.

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Oral argument held November 1, 2023. Opinion filed October 4, 2024. Reversed.

*Ryan J. Eddinger*, Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Claire Kebodeaux*, assistant district attorney, argued the cause, and *Mark A. Dupree Sr.,* district attorney, and *Kris W. Kobach*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Felony murder is the killing of a human being committed in the commission of, attempt to commit, or flight from an inherently dangerous felony. K.S.A. 21-5402(a)(2). The State must establish all elements of the alleged underlying felony to successfully prove felony murder. *State v. Milo*, 315 Kan. 434, 442, 510 P.3d 1 (2022). Here, Tirrell Stuart argues the State failed to demonstrate the distribution-of-marijuana offense the State alleged to support his felony-murder conviction. See *State v. Hillard*, 313 Kan. 830, 850, 491 P.3d 1223 (2021) (reversing conviction for conspiracy to distribute methamphetamine, reasoning insufficient evidence showed the buyer agreed to distribute after acquiring). We agree with Stuart. For that reason, we must reverse his felony-murder conviction and vacate the sentence. See *Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) (noting the Double Jeopardy Clause prohibits a second trial to let the prosecution fix its insufficient evidence problem from the first trial); *State v. Scott*, 285 Kan. 366, 372, 171 P.3d 639 (2007) (when reversing a conviction based on insufficient evidence, "no retrial on the same crime is possible").

FACTUAL AND PROCEDURAL BACKGROUND

Hanna Lindsay was at Stuart's apartment with other friends when Emilio Lopez contacted her by Facebook Messenger to ask if she wanted to buy some marijuana. She agreed and arranged to get $50 worth. She drove Stuart and three other friends to Lopez' house. Stuart handed Lopez the money, and he handed Stuart the marijuana. Hanna then drove Stuart and the others to pick up another friend, S.L., and they returned to the apartment. Hanna testified they "were all sitting there smoking."

According to Hanna, about two hours later, Stuart asked her to buy more marijuana, so she set up another deal with Lopez for $200 worth. She said she drove back to Lopez', with S.L. sitting in the front passenger seat and Stuart in the back. When they

2

arrived, Hanna recalled Lopez walked over to the front passenger door to talk with her and S.L. through an open window. Stuart handed S.L. the money, who passed it to Lopez, who handed the marijuana to S.L.

The problem came when Lopez said the money seemed fake and grabbed the marijuana back from S.L. Both women testified Stuart shot Lopez through the open front passenger window after Lopez took the marijuana back from S.L. He died in the front yard. The State charged Stuart with felony murder with distribution of marijuana as the predicate felony. Stuart denied being present at this second transaction.

The district court's felony-murder instruction stated:

"The defendant is charged with Murder in the First Degree. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant killed Emilio Lopez.

"2. The killing was done while defendant was committing distribution of marijuana.

"3. This act occurred on or about the 24th day of January, 2020, in Wyandotte County, Kansas.

. . . .

"The elements of distribution of marijuana are as follows:

"1. The defendant distributed marijuana.

"2. The quantity of the marijuana was less than 25 grams.

3

. . . .

"'Distribute' means the actual, constructive, or attempted transfer of an item from
one person to another, whether or not there is an agency relationship between them.
*'Distribute' includes sale, offer for sale, or any act that causes an item to be transferred
from one person to another.*" (Emphasis added.)

A jury convicted Stuart, and the district court imposed a life sentence without possibility of parole for 25 years. Stuart directly appeals to this court. Jurisdiction is proper. See K.S.A. 22-3601(b)(3), (b)(4).

## ANALYSIS

Stuart makes two claims on appeal:  The State did not prove the underlying felony of distribution of marijuana supporting the felony-murder verdict; and the trial court failed to instruct the jury on a definition of possession. But we need not reach the second claim because the first one requires reversal of Stuart's felony-murder conviction.

*Standard of review*

An appellate court reviews evidence sufficiency challenges in the light most favorable to the prosecution to determine whether a rational factfinder could have found a defendant guilty beyond a reasonable doubt. In so doing, the court does not reweigh evidence, assess witnesses' credibility, or resolve evidentiary conflicts. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). This sets a rather low bar for the State to clear on appeal. *State v. Chandler*, 307 Kan. 657, 672, 414 P.3d 713 (2018). Even so, once insufficiency is determined, it is not toothless. See *Scott*, 285 Kan. at 372.

4

*Discussion*

Felony murder is "the killing of a human being committed . . . in the commission of, attempt to commit, or flight from any inherently dangerous felony," including distribution of marijuana. K.S.A. 21-5402(a)(2), (c)(1)(N). It is "unlawful for any person to distribute or possess with the intent to distribute" marijuana. K.S.A. 21-5705(a)(4); K.S.A. 65-4105(d)(17). "'Distribute' means the actual, constructive or attempted transfer from one person to another of some item whether or not there is an agency relationship" and "includes, but is not limited to, sale, offer for sale or any act that causes some item to be transferred from one person to another." K.S.A. 21-5701(d).

Possession is an essential element of distribution, requiring a person have "joint or exclusive control over an item with knowledge of and intent to have such control." K.S.A. 2019 Supp. 21-5701(q); see *State v. Crosby¸* 312 Kan. 630, 637-38, 479 P.3d 167 (2021) (providing transferring a controlled substance is impossible without first having joint or exclusive control over the substance at issue). There is no temporal requirement, as made plain by K.S.A. 2019 Supp. 21-5701(q)'s language, despite Stuart's suggestion otherwise.

Viewing the evidence in the light most favorable to the State, we hold Stuart possessed the marijuana through joint control once Lopez handed it to S.L.—she acted as Stuart's intermediary by exchanging the money and drugs for his benefit. See Black's Law Dictionary 1409 (11th ed. 2019) (defining joint possession as "[p]ossession shared by two or more persons"). But this conclusion only gets us part way to sustaining Stuart's conviction because mere possession is not enough to establish distribution, and that is where the State's case runs aground.

The State must also show Stuart distributed or intended to distribute the marijuana beyond personal use. See K.S.A. 21-5701(d). The State's "evidence may be circumstantial—flowing from reasonable inferences and possibly statutory presumptions," "[b]ut it must be present for there to be a conviction." *State v. Mora*, 315 Kan. 537, 548, 509 P.3d 1201 (2022).

Both *Crosby* and *Hillard* discussed distribution's transfer requirement. In *Crosby*, the court held a distribution conviction must be supported by evidence that establishes a defendant first possessed the controlled substance before transferring it to another. *Crosby*, 312 Kan. at 637-38. But it declined to consider whether a person who only receives drugs is guilty of distribution. 312 Kan. at 636. Even so, its discussion signaled a distribution conviction needs more than possession. And shortly after *Crosby*, the court in *Hillard* concluded distribution requires evidence that demonstrates a defendant further transferred the drug after obtaining possession or possessed with intent to distribute it. *Hillard*, 313 Kan. at 850. The *Hillard* court reversed the distribution conviction, reasoning the State merely showed the defendant "conspired to 'distribute' a controlled substance to herself only," which is possession, not distribution. 313 Kan. at 850. In other words, simply acquiring a controlled substance is not enough to prove the recipient is guilty of distribution.

It seems obvious from the trial record here that the State did not appreciate it needed to prove the intent-to-distribute element to convict Stuart on this felony-murder charge. Its case focused entirely on the drug buy—not what was going to happen afterward to transfer the newly purchased marijuana to someone else. See *Hillard*, 313 Kan. at 850 (noting the State failed to present any evidence of the defendant's "intentions for the drug once she received it"). This seems most apparent from the prosecutor's closing argument outlining "what I have to prove," which explained:

6

"No. 2, the killing was done while the defendant was committing distribution of marijuana. At the bottom of [the jury instruction], it talks about the definition of distribute and Kansas law does not talk about the differences between a buyer and a seller in distribution. It says distribution does include the sale, offer for sale or an act that causes an item to be transferred from one person to another, which is a buyer or a seller. *Tirrell Stuart was engaged in distributing marijuana when he gave the money and was trying to get the weed.*

"No. 3, this happened on January 24th of 2020 in Wyandotte County, Kansas. Over and over you heard that Emilio Lopez died at 8000 Greeley here in Wyandotte County, Kansas. We're talking about distribution of marijuana. So those elements are out here too. *We're talking about the defendant Tirrell Stuart distributed marijuana. He was involved in the drug deal. He was an active participant in the drug deal. He provided the money. His goal was to receive drugs, marijuana.*" (Emphases added.)

Later the prosecutor said: "And so that's why I submit that the defendant is guilty of distributing marijuana and that he killed [Lopez] *in the middle of that distribution*, that he knew, the defendant knew what he was doing." (Emphasis added.)

The State's closing argument glaringly misstated the law on distribution as described in *Crosby* and *Hillard*. Stuart could not be guilty of distribution under our caselaw simply because, as the prosecutor told the jury, "[H]e gave the money and was trying to get the weed." And nowhere in the State's closing did it mention it had to prove—or did prove—Stuart intended to transfer the marijuana to someone else after buying it. The State even conceded at oral argument to this court that its prosecution theory did not concern itself with Stuart's intentions for the drug once he acquired it.

If the issue were prosecutorial error, the State's closing argument would be a misstatement of the applicable law. See *State v. Watson*, 313 Kan 170, 171-72, 484 P.3d

7

877 (2021) (reversing Medicaid fraud conviction when prosecutor misstated the law by arguing submission of timesheets was sufficient regardless of the defendant's intent to defraud). But our issue is evidence sufficiency, so where does that leave us?

To begin with, the State's understanding about what it needed to prove is not really important. Instead, we must ask whether a reasonable juror could find beyond a reasonable doubt that Stuart distributed or intended to distribute the marijuana from Lopez based on the evidence presented. See *State v. Pepper*, 317 Kan. 770, 776, 539 P.3d 203 (2023) (explaining evidence sufficiency asks only if the evidence was ever strong enough that a reasonable trier of fact could have found the crime's essential elements beyond a reasonable doubt). And the State now argues on appeal a "rational fact-finder could find Stuart guilty of distribution because there is a reasonable inference that Stuart was buying to give to his friends and share the marijuana" purchased from the second deal. In other words, in its effort to salvage this conviction, the State drops its earlier assertion that Stuart distributed by receiving the drug from Lopez.

But in advancing this new argument, the State fails to confront *Mora*'s suggestion that the mere act of sharing marijuana with codefendants may remain personal use under some circumstances. See *Mora*, 315 Kan. at 550 ("We reject the State's contention that the mere act of Bledsoe and Mora consuming the marijuana together would satisfy the statutory definition of distribution."). There, the court noted, no evidence supported the defendant "ever sold or offered marijuana for sale, arranged to meet anyone to sell marijuana to, or anything else that could suggest he was engaging in distribution." 315 Kan. at 550. Here, Hanna was also charged with felony murder, so any marijuana Stuart might have intended to share with her seemingly implicates *Mora*.

This confronts us with yet another legal quandary:  Does *Mora* incorrectly limit distribution's statutory definition? See K.S.A. 21-5701(d). Neither party briefed this question, but Stuart did not dispute it. In the end, we will assume, without deciding, the

State's new premise on appeal interprets the statute's text correctly. See *State v. Gonzalez*, 307 Kan. 575, 592, 412 P.3d 968 (2018) ("Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority or in the face of contrary authority, is akin to failing to brief an issue. When a party fails to brief an issue, that issue is deemed waived or abandoned.").

In examining the State's new argument and determining whether sufficient evidence existed, we consider both the direct and circumstantial evidence in the record. "Direct evidence is such evidence which, if believed, proves the existence of a fact without inference or presumption, as for example the testimony of an eyewitness as to what he or she actually saw, heard, or touched." *State v. Scaife*, 286 Kan. 614, 620, 186 P.3d 755 (2008). And "'[c]ircumstantial evidence tends to prove a fact in issue by proving other events or circumstances which afford a basis for reasonable inference by the jury of the occurrence of the fact in issue.'" *State v. Evans*, 275 Kan. 95, 105, 62 P.3d 220 (2003). Circumstantial evidence can support a conviction of even the most serious offense and the law does not differentiate between the probative values of direct and circumstantial evidence, treating both as having similar weight in proving relevant facts. *State v. Darrow*, 304 Kan. 710, 720, 374 P.3d 673 (2016); *Scott*, 285 Kan. at 372.

Here, the State failed to introduce direct evidence about the second transaction to establish the distribution element. From the first transaction, we know Stuart "did the deal," by exchanging money for marijuana with Hanna, Yulianna, Bones, and Quavo in the car. But what happened next is less clear because the record is littered with ambiguous pronouns. For example, when discussing the first deal, the prosecutor asked Hanna, "Did you all get weed from [Lopez]?" to which she responded, "Yes, we did." And when the prosecutor asked, "Where did you go after you all got the weed from Emilio?" Hanna said "we" went to pick up S.L. from work, joining them "all" in the car. The prosecutor then asked, "Where did you guys go?" and Hanna responded that "we" drove to Stuart's apartment. In response to the question "[w]hat happened when you all

9

get back to the apartment?" Hanna testified: "Bones rolled up a blunt. We were all sitting there smoking." She also testified "we hung out for awhile [*sic*]." But this does not tell us if "we" refers to the same group the entire time or what they smoked.

S.L.'s testimony also does not clarify these ambiguities. She said Hanna picked her up from work with "a kid named Bones and his girlfriend Yulianna and a kid named Quavo and a Mexican kid, I don't remember his name. I don't remember who else." She said, "We went to [Stuart's] house" where "[w]e were just hanging out with [Stuart] and we got some beer and we just hung out." But she could not remember if other people were smoking marijuana, just cigarettes. At oral argument, the State conceded S.L. did not smoke any marijuana that night. And what about the mother of Stuart's children who lived in the apartment, but no evidence shows if she was even present?

As defense counsel noted at oral argument, "there's a hole, a pretty big one" in the evidence. And the State concedes it failed to ask if Stuart ever shared his marijuana from the first buy. In any event, believing all of Hanna's testimony, we only know from the direct evidence that Stuart possessed the marijuana from the first deal, but not if he shared it. Similarly, no trial evidence directly shows Stuart ever intended to distribute marijuana from the second transaction.

Even so, that does not end our inquiry because circumstantial evidence, which requires a factfinder to draw reasonable inferences, may equally prove distribution or support a conviction of even the gravest offense. See *Scott*, 285 Kan. at 372; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014). A reasonable inference is when "different circumstances are used to support separate inferences or where multiple pieces of circumstantial evidence separately support a single inference. *State v. Banks*, 306 Kan. 854, Syl. ¶ 3, 397 P.3d 1195 (2017). An unreasonable inference, on the other hand, is one based on mere suspicion or inference stacking. *State v. Doyle*, 201 Kan. 469, 489, 411 P.2d 846 (1968) (stating "mere suspicion, however strong, is not enough and juries are

not permitted to base verdicts of conviction on suspicion"); *Mora*, 315 Kan. at 547 (noting "stacking one presumption upon another to reach a fact is" prohibited). Simply put, an inference that presumption A, presumption B, and presumption C all independently point to fact D is reasonable and permitted; an inference, however, that presumption A leads to presumption B leads to presumption C leads to fact D is unreasonable and prohibited. *Banks*, 306 Kan. at 861.

So starting with the evidence relating to the first deal, we directly know: (1) the group of friends all went together to "get weed from [Lopez]," (2) Stuart handed Lopez money and Lopez handed him the marijuana, (3) the group picked up S.L. and returned to Stuart's place, and (4) "Bones" rolled a joint and "we all" smoked. Stuart does not dispute these facts. And from the same evidence we can reasonably presume Stuart shared the initial purchase with the friends by smoking at his apartment. We can do so because that assumption flows from separate, proven facts—not from a string of inferences based on a single proven fact. See 29 Am. Jur. 2d Evidence § 214 ("Rule against inference-stacking prohibits an inference where an initial inference is drawn from a fact, and other inferences are built solely and cumulatively upon the first, so that the conclusion reached is too remote and has no sound logical foundation in fact."). In the words of the *Banks* court, the State showed fact A, fact B, and fact C all independently lead to fact D—Stuart distributed the drugs after the first transaction (assuming without deciding the State's distribution premise).

But the reasonable inference (fact D) does not establish the underlying felony of distribution for felony murder, which is premised on the second transaction. When viewed in the light most favorable to the prosecution, the evidence shows the first deal was a discrete occurrence from the second transaction and Lopez' death. The first buy happened earlier in the day with Stuart and his friends going back to the apartment, before Stuart returned for the second buy with a different group. Fact D was unconnected to Stuart shooting Lopez for taking the second drug back. See *State v. Patillo*, 311 Kan.

11

995, Syl. ¶ 5, 469 P.3d 1250 (2020) (under the felony-murder statute, the killing must occur within the res gestae of the underlying crime, and there must be a direct causal connection between the felony and the resulting death).

Accordingly, the State must prove Stuart intended to distribute the marijuana from the second deal to establish the underlying felony it alleged. But that is where the "big hole" appears in the State's evidence. Hanna testified that after the first transaction they hung out for a while, at which point Stuart told her "to ask Emilio if [they] could pull up for some more"—$200 worth. She also testified about her Facebook messages with Lopez. She said, "slide me 30gs for 2 bills," meaning 30 grams for $200. Lopez replied, "[Y]ou really want that for $200?" She messaged back, describing that message at trial as indicating Stuart "liked what we had gotten the first time and he wanted to get more of it."

From this, we directly know Stuart liked the initial purchase, and that he asked Hanna to buy a larger quantity. Based on this, the State insists we still can reasonably infer an intent to distribute from the second deal. It reasons Stuart first bought $50 worth and shared it with friends and then asked Hanna to set up a second purchase "to buy even more marijuana." This, in the State's view, strengthens the presumption he was purchasing to again share with his friends like he did after the first buy.

But this pile of guesswork impermissibly requires making an inference based on another inference. The State entirely misses that its proposed presumption is only a logical conclusion if we initially make the separate inference that Stuart distributed the first deal. It incorrectly assumes it directly proved that fact with the evidence discussed above. And it goes on, without any citation to the record, to argue even if he were not going to share with the other friends, Stuart must have intended to share with Hanna and S.L.—even though the State concedes S.L. never smoked at any time that day. All the State has is Hanna "hoping for other people to purchase" marijuana so she could smoke

12

it, but that says nothing about Stuart's state of mind. The State's prosecutorial assumption requires an unreasonably large jump to conclude Stuart intended to distribute the second purchase from what the State proved at trial.

The court in *Mora* illustrates the inference stacking problem presented here. There, the defendant's felony-murder conviction was based on two underlying felonies: attempted aggravated robbery and distribution of marijuana. In reversing the conviction based on attempted aggravated robbery, the *Mora* court held the State's case impermissibly stacked inferences to conclude the defendant intended to commit aggravated robbery. *Mora*, 315 Kan. at 546-47. The district court first inferred the defendant had no money from the established facts that he lacked a job, home, and car. And from that, the district court made a second inference the defendant necessarily intended to rob the drug dealer because he could not get the marijuana any other way. The same impermissible logic contaminates Stuart's prosecution.

All the State has here is Hanna "hoping for other people to purchase" marijuana so she could smoke it—a fact the dissent hangs its hat on. But her hope says nothing about Stuart's state of mind, which is where the focus needs to be for the State to prove its case. Her desire about smoking Stuart's second purchase does not reveal whether he intended to share it with others or just consume it himself sometime later.

There is insufficient evidence in the record to support the distribution element of the underlying offense, which means the evidence is necessarily insufficient to sustain Stuart's felony-murder conviction. And with that, we need not consider the second issue of instructional error.

Reversed.

\* \* \*

STEGALL, J., dissenting:  I would hold there is sufficient evidence to support the conviction for felony murder with the underlying felony of distribution of marijuana. Showing insufficient evidence "is a high burden, and only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

The testimony heard by the jury—and explained by the majority—present enough circumstantial evidence to allow a reasonable juror to conclude that Stuart intended to distribute marijuana. *State v. Scott*, 285 Kan. 366, 372, 171 P.3d 639 (2007) (circumstantial evidence may support a conviction of even the gravest offense); *State v. Pepper*, 317 Kan. 770, 776, 539 P.3d 203 (2023) (explaining evidence sufficiency asks only if the evidence was strong enough that a reasonable trier of fact could have found the crime's essential elements beyond a reasonable doubt).

> "'Distribute is defined as "the actual, constructive or attempted transfer from one person to another of some item whether or not there is an agency relationship." K.S.A. 2019 Supp. 21-5701(d). This "includes, but is not limited to, sale, offer for sale or any act that causes some item to be transferred from one person to another." K.S.A. 2019 Supp. 21-5701(d).'" *State v. Mora*, 315 Kan. 537, 549, 509 P.3d 1201 (2022) (quoting *State v. Crosby*, 312 Kan. 630, 637, 479 P.3d 167 [2021]).

Thus, the question before us is whether a reasonable juror could find beyond a reasonable doubt Stuart was purchasing marijuana with the intent to later transfer, by any act, at least some of that marijuana to another person. K.S.A. 21-5701(d). The majority makes much of the fact that in their view, such a conclusion would require impermissible inference stacking between the first and the second marijuana purchase. This distracts

14

from the possibility that a reasonable juror could make such a finding based solely on the facts surrounding the second transaction. And this possibility is certainly supported by the evidence.

The first transaction does lay the evidentiary back-drop to a full understanding of the second transaction. Stuart had asked Hanna to set up a second purchase—on the same day—for more marijuana from the same person. *State v. Stuart*, 319 Kan. ___, slip op. at 2, 12.

> "Hanna testified that after the first transaction they hung out for a while, at which point Stuart told her 'to ask Emilio if [they] could pull up for some more'—$200 worth. She also testified about her Facebook messages with Lopez. She said, 'slide me 30gs for 2 bills,' meaning 30 grams for $200. Lopez replied, '[Y]ou really want that for $200?' She messaged back, describing that message at trial as indicating Stuart 'liked what we had gotten the first time and he wanted to get more of it.'" 319 Kan. ___, slip op. at 12.

The majority states that "[f]rom this, we directly know Stuart liked the initial purchase, and that he asked Hanna to buy a larger quantity." 319 Kan. ___, slip op. at 12.

But we also know that Stuart liked what "we" got the first time, and the majority admits there's a reasonable inference that Stuart shared what "they" got from the first transaction. 319 Kan. ___, slip op. at 11. Jurors also knew that the second time around, Hanna wanted "other people to purchase" marijuana so "she could smoke it." 319 Kan. ___, slip op. at 13. And in fact, the evidence shows that Stuart was the "other" person whose marijuana Hanna was planning to smoke. No impermissible inference stacking is required to reach such a conclusion. The majority over-thinks the evidentiary question before us. To a reasonable juror exercising ordinary knowledge and common-sense, the testimony paints a relatively simply picture—a planned marijuana purchase which was intended for later use among a group of friends who had been partying all day, and desired to continue doing so.

15

I would hold that based on the evidence presented, viewed in the light most favorable to the State, a jury could reasonably conclude that Stuart arranged the second buy with the intention of later distributing that marijuana among friends.

For this reason, I dissent.

LUCKERT, C.J., joins the foregoing dissenting opinion.